## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, an individual
7050 W. Palmetto Park Road, #15-287
Boca Raton, FL, 33433

           Plaintiff,

v.

ESTHER LIM, in her individual capacity
1728 Fairview Ave
McLean, VA

   And

JULIA PORTER, in her individual capacity
3315 Old Dominion Blvd.
Alexandria, VA 22305

   And

HAMILTON FOX, in his individual capacity
729 Massachusetts Avenue NE
Washington, D.C. 20002

   And

ELIZABETH HERMAN, in her individual capacity
4550 North Park Avenue #813
Chevy Chase, MD 20815

   And

H. CLAY SMITH III, in his individual capacity
8221 Greenspire Terrace
Hyattsville, MD 20783

   And

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street NW
Building A, Suite 117
Washington, DC, 20001

   And

DISTRICT OF COLUMBIA BAR
901 4th Street NW
Washington, DC 20001

Case No.:


**COMPLAINT**

Defendants.

## I.  INTRODUCTION

1.    Plaintiff Larry Klayman ("Mr. Klayman") brings this action against the president of the District of Columbia Bar Esther Lim ("Defendant Lim") in her individual capacity and the ("Individual Bar Counsel Defendants'), Julia Porter ("Defendant Porter"), Hamilton Fox ("Defendant Fox"), Elizabeth Herman ("Defendant Herman") and H. Clay Smith III ("Defendant Smith"). The Individual Defendants are all employed by the Defendant District of Columbia Office of Disciplinary Counsel ("ODC") which "serves as the chief prosecutor for attorney disciplinary matters involving active or inactive attorneys who are members of the D.C. Bar."[1] Defendant Lim, Defendant Porter, Defendant Fox, Defendant Herman, and Defendant Smith, while acting in concert in a conspiracy under the "color" of state law, are being sued for actions taken in their individual capacities and outside the scope of their official duties. ODC is being sued in its official capacity. The District of Columbia Bar is being sued in its official capacity. Defendants, acting in concert and as joint tortfeasors, intentionally violated Mr. Klayman's statutory, constitutional, and other rights due to Mr. Klayman's political beliefs, public interest activism, and gender, pursuant to their own individual biases, prejudices, political views, loyalties, and allegiances.

## II.  JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

---

[1] https://www.dcbar.org/attorney-discipline/office-of-disciplinary-counsel/obcmission.cfm

3.      This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

4.      This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367.

5.      Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) in that Defendants reside here and are subject to personal jurisdiction in this District. Venue is proper in the District of Columbia because the conduct complained herein arises out of Defendants' unconstitutional and illegal conduct occurring in the District of Columbia.

III.    PARTIES

6.      Plaintiff Larry Klayman is an individual, a natural person. Mr. Klayman is at all relevant times a citizen of the state of Florida.

7.      Defendant Esther Lim is an individual, natural person, Defendant Lim is at all relevant times a citizen of Virginia.

8.      Defendant Julia Porter is an individual, a natural person. Defendant Porter is at all relevant times a citizen of Virginia.

9.      Defendant Hamilton Fox is an individual, a natural person. Defendant Fox is at all relevant times a citizen of the District of Columbia.

10.     Defendant Elizabeth Herman is an individual, a natural person. Defendant Herman is at all relevant times a citizen of Maryland.

11.     Defendant H. Clay Smith III is an individual, a natural person. Defendant Smith is at all relevant times a citizen of Maryland.

12.     Defendant Office of Disciplinary Counsel serves as the chief prosecutor for attorney disciplinary matters, and purports to have a dual function: "to protect the public and the courts from unethical conduct by members of the D.C. Bar and to protect members of the D.C. Bar from unfounded complaints."

13.     Defendant District of Columbia Bar oversees attorneys who are licensed to practice in Washington D.C and has ultimate supervisory authority over the Office of Disciplinary Counsel.

## IV.     STANDING

14.     Mr. Klayman has standing to bring this action because he has been directly impacted by the unlawful conduct complained herein.  His injuries are proximately related to the conduct of Defendants.

## V.      FACTS

### Background Facts

15.     Mr. Klayman is an attorney licensed to practice law in the District of Columbia, who has been a member continuously in good standing since 1980 and with no current disciplinary record.

16.     The Individual Bar Counsel Defendants, Defendant Lim, ODC, and the District of Columbia Bar ("DC Bar"), acting in concert as joint tortfeasors, each and every one of them, have engaged in a pattern and practice of abusing and exceeding their position of authority, which is granted under state law, but which the abuse of authority is not, to act outside the scope of their official duties and intentionally violate Mr. Klayman's constitutional and other rights by selectively prosecuting Mr. Klayman because of his political activism, free speech, and gender, as set forth in more detail below.

17.     Mr. Klayman is a prominent conservative and non-partisan attorney and public interest activist who has brought lawsuits against Hillary Clinton, Barack Obama, George W. Bush, and other politicians and government officials. He conceived of and founded the prominent public interest watchdog groups, Judicial Watch, Inc. and Freedom Watch, Inc., and is a former U.S. Department of Justice federal prosecutor, having been on the trial team that broke up the AT&T monopoly during the Reagan administration. In 2003-2004, he ran for the U.S. Senate in the Florida Republican Primary. Mr. Klayman is also the only lawyer to ever have a court rule that a president – former President Bill Clinton – had committed a crime, when Bill Clinton illegally released the Privacy Act protected White House government file of a woman he had allegedly sexually abused and harassed in the Oval Office, Kathleen Willey. Mr. Klayman has also represented Juanita Broaddrick, Gennifer Flowers, Paula Jones, Dolly Kyle Browning, and other Bill Clinton female victims, who Hillary Clinton is alleged to have retaliated against and tried to destroy in order to advance her and her husband's political interests. Mr. Klayman is a supporter of and legal advocate for women's rights.

18.     Even a cursory search of FEC records shows that Defendant Fox, as well as Deputy Bar Disciplinary Counsel Elizabeth Herman both donated significant sums of monies to Hillary Clinton and Barack Obama as well as other liberal Democrats.

19.     It is clear that Defendants' goal is to remove Mr. Klayman from the practice law because they do not agree with his political and other beliefs without any regard for Mr. Klayman's constitutional due process and other rights.

20.     Defendants have clearly demonstrated this illegal and unconstitutional motivation to remove Mr. Klayman from the the practice of law through their actions regarding three pending actions against Mr. Klayman: (1) Bar Docket No. 2008-D048 (the "First Complaint");

(2) Bar Docket No. 2011-D028 (the "Second Complaint"); and (3) Bar Docket No. 2017-D051 (the "Bundy Complaint").

**Facts Pertaining to the Bundy Complaint**

21.     This instant action is based upon the conduct of Defendants concerning the Bundy Complaint, wherein the Individual Bar Counsel Defendants and ODC initiated a proceeding before the Board of Professional Responsibility - by fraudulently inducing a member of the Board to sign off - when they were on notice that there are pending appellate proceedings before the Supreme Court and even the U.S. Court of Appeals for the Ninth Circuit. Exhibit 1.

22.     Defendant Lim, as president of the DC Bar, was placed on notice of the illegalities pled herein by other Defendants, but has failed to take remedial action, in effect ratifying and condoning the illegalities alleged herein, and is therefore legally liable for the unconstitutional and other illegal conduct of her co-defendants. Exhibit 2. Defendant Lim is the president of the District of Columbia Bar and is responsible for the illegal conduct of the Office of Disciplinary Counsel, which serves under her authority, command, and supervision.

23.     The Bundy Complaint stems from Mr. Klayman's attempts to obtain *pro hac vice* entry in Nevada to defend Cliven Bundy ("Mr. Bundy"), who had retained Mr. Klayman to represent him in his criminal defense.

24.     Mr. Bundy was facing the possibility of life imprisonment stemming from a standoff with federal agents who had invaded the land that he and his family had ranched on for nearly 150 years.

25.     The Bundy prosecution was a highly politicized case, given the constitutional Second Amendment issues involved, and was assigned to a highly politicized liberal jurist, the

Honorable Gloria M. Navarro ("Judge Navarro"), who was doing everything that she could to ensure a conviction against Mr. Bundy.

26.    Judge Navarro's conduct became so blatant that the local Las Vegas Review Journal published an article stating:

> **Government prosecutors have a friend in U.S. District Judge Gloria Navarro**. The judge is presiding over the retrial of four defendants charged with various crimes stemming from their participation in the 2014 Bunkerville standoff near Cliven Bundy's ranch….On Monday, the judge eviscerated the defense's legal strategy, putting off limits a whole host of issues that might make it more difficult for the government to win convictions. The defendants will be forbidden from arguing that they were exercising their constitutional rights to peaceably assemble and bear arms. They may not highlight the actions of BLM agents in the days leading up to the incident or mention federal gaffes such as the ill-advised "First Amendment" zone created for protesters. And if imposing these restrictions on the defense wasn't enough, Judge Navarro ruled that prosecutors may introduce testimony about the four accused men and their associations with so-called militia groups…..But the issue here isn't whether one believes the Bundy defendants are courageous freedom fighters or zealous lunatics. Rather it's whether a judge should usurp the rights of the defendants to have a jury of their peers consider their arguments alongside the law, evidence and other testimony. **Judge Navarro's sweeping order reflects a deep mistrust of the American jury system**.[2]

27.    One of the tactics employed by Judge Navarro and the prosecution in the Bundy matter was to keep Mr. Klayman from representing him, as they knew that the local counsel retained by Mr. Bundy for the purpose of satisfying *pro hac vice* rules did not have the requisite resources and experience to defend Mr. Bundy on his own in such a complex matter, involving nearly 20 co-defendants.

28.    In effect, Judge Navarro and the prosecution believed that by keeping Mr. Klayman out of the case, they would almost certainly be assured a conviction.

---

[2] *EDITORIAL: Judge bans defense arguments in Bundy retrial*, Las Vegas Review Journal, Jul. 13, 2017, available at: https://www.reviewjournal.com/opinion/editorials/editorial-judge-bans-defense-arguments-in-bundy-retrial/.

29.     The most recent Bundy Complaint by ODC involves alleged "misconduct" by Mr. Klayman in his strong efforts to protect Mr. Bundy's Sixth Amendment right to counsel of choice and represent him.

30.     The Bundy Complaint is meritless and lacks the requisite clear and convincing evidence. It was initiated solely to "pile on" Mr. Klayman further and to attempt to remove Mr. Klayman from the practice of law.

31.     Indeed, the major premise of the Bundy Complaint was that Mr. Klayman had allegedly not been truthful in his *pro hac vice* application regarding the First Complaint.

32.     Mr. Klayman had offered his opinion that the First Complaint was "likely to be resolved in my favor" and it was entirely factually accurate that "there has been no disciplinary action."

33.     Indeed, the Honorable Ronald M. Gould ("Judge Gould") of the U.S. Court of Appeals for the Ninth Circuit expressly found that "Klayman properly disclosed the ongoing disciplinary proceeding in his initial application for pro hac vice admission, saying that the proceeding had not yet been resolved. This disclosure was accurate." *Bundy v. United States Dist. Court (In re Bundy)*, 840 F.3d 1034, 1054 (9th Cir. Oct. 28, 2016).

34.     Judge Gould further reasoned:

> I agree with Klayman that he was not obligated to re-litigate the D.C. proceeding before the district court and that he did not have to provide the district court with the entire record from D.C. And if his disclosures were selective, still he is an advocate, an advocate representing defendant Cliven Bundy, and after submitting a compliant response to the questions in the pro hac vice application, he had no greater duty to disclose any possible blemish on his career or reputation beyond responding to the district court's further direct requests. *Id*. at 1055 (emphasis added).

35.     As such there cannot possibly have existed the requisite clear and convincing evidence to initiate the Bundy Complaint when a highly respected jurist, Judge Gould, expressly

found that Mr. Klayman was not guilty of the accusations set forth in the Specification of Charges.

36.     In doing so, the Individual Bar Counsel Defendants and ODC are essentially calling Judge Gould a liar without any reasonable basis to do so.

37.     In any event, this matter is currently pending before the U.S. Supreme Court. The Individual Bar Counsel Defendants and ODC are aware of this fact, as they have been sent a courtesy copy of Mr. Klayman's Petition. Exhibit 2.

38.     Defendants were also on notice that Mr. Klayman also intends to file a renewed Petition for Writ of Mandamus to the U.S. Court of Appeals for the Ninth Circuit, as the decision to deny his entry *pro hac vice* in the Bundy matter has caused him continuing harm in his public interest advocacy and litigation.

39.     Thus, the Individual Bar Counsel Defendants and ODC rushed to file the Bundy Complaint before it has even reached any type of final resolution in the courts.

40.     They have taken it upon themselves to usurp the role of the courts and play "judge, jury, and executioner" in their clear efforts to remove Mr. Klayman from the practice of law.

41.     Defendants engaged in further illegalities by causing and furthering the publication of  the filing of the Specification of Charges in the Bundy Complaint through the website Law360 (to also harm Mr. Klayman's reputation), and by seeking to serve Mr. Klayman via "alternative means."

42.     These actions are intended and meant to unethically communicate with the appellate courts to attempt to bias and prejudice them while they are deliberating on Mr. Klayman's pending appeals, including but not limited to the District of Columbia Court of

Appeals, where  Defendants have asked that Mr. Klayman be suspended from the practice of law and be subject to a reinstatement provision with regard to the First Complaint.

43.     This clearly evidences bias, animus, disdain, and retaliatory motive against Mr. Klayman.

44.     It is not Defendants' job to selectively prosecute those who happen to hold opposing viewpoints and advocate for different policies in order to silence them by removing them from the practice of law.

45.     Defendants cannot be above the law in the regard. They are acting in their individual capacities, as it is clearly not within their official duties to abuse their position of authority to achieve their personal agendas.

## The Bundy Complaint is a Furtherance of Defendant's Improper Goal to Remove Mr. Klayman From the Practice of Law

46.     These three complaints are without merit, much less the required clear and convincing evidence, and have been initiated against Mr. Klayman by the Individual Bar Counsel Defendants and ODC for the purpose of removing Mr. Klayman from the practice of law in order to, in effect, silence his public interest advocacy and work.

47.     Indeed, the Second Complaint, which purportedly stemmed from Mr. Klayman's representation of a former client, was inexplicably revived by the Individual Bar Counsel Defendants after 8 years of delay and after two other state bars, Pennsylvania and Florida, summarily and timely dismissing identical complaints. The previous one is now 13 years old.

48.     Defendants believe that they can "pile on" by filing a new case or cases before the Board of Professional Responsibility, as they have done with regard to the Second Complaint, and now the Bundy Complaint, they can argue that this on-going proceeding, which would go on for years, would be grounds for Mr. Klayman not to be reinstated, effectively disbarring him,

especially since he is now 67 years old – and would be in effect the involuntarily retiring of Mr. Klayman.

49.    This piling on is also intended to bankrupt Mr. Klayman, as he has already expended considerable monies in defense of the First Complaint. Thus, regardless of Defendants' chances of success in the Second Complaint and the Bundy Complaint, Defendants can seek to silence Mr. Klayman just by driving him into financial ruin.

50.    Confirming and thus supporting the fact that Mr. Klayman is being selectively, unethically, unconstitutionally, and illegally prosecuted for his politics, activism, free speech, and gender, is the extremely hostile and disrespectful demeanor and words Defendant Herman exhibited during a meeting that occurred on July 28, 2017 and at other times, which exhibited bias and discrimination as well, based on his public advocacy, free speech, and gender.

51.    Defendant Herman abruptly and in a hostile voice refused to say whether she had had contact and/or met with the former client in the Second Complaint. In fact, she told Mr. Klayman that this was "none of his business."

52.    Furthermore, Defendant Herman's brazenly and openly admitted her bias and animus against Mr. Klayman due to his political beliefs, activism, free speech, and gender, which explains her participation in her baseless prosecution against him, when she curtly and in a hostile manner, on more than one occasion, stated to Mr. Klayman, "I [we] don't like the way you practice law."

53.    It is indisputable that Defendant Herman's personal feelings should have no impact on the performance of her professional duties, but her open admission clearly shows that she is driven by her bias and animus due to Mr. Klayman's political beliefs, activism, free speech, and gender.

54.     Furthermore, when Mr. Klayman advised Defendant Herman at the same meeting that The Florida Bar and the Pennsylvania Bar had summarily dismissed the Second Complaint at the time seven years ago, she on behalf of Defendants stated that "we couldn't care less."

55.     This gender-based and political vendetta against Mr. Klayman is clearly demonstrated and confirmed in a meeting that Mr. Klayman had with Defendant Smith on September 29, 2017.

56.     Defendant Smith strangely suggested that rather than appealing the hearing committee's findings with regard to the First Complaint alleging conflicts of interest to the Board, Mr. Klayman should simply agree to resign from the bar, which is in effect, disbarment.

57.     Defendant Smith then stated that if Mr. Klayman would agree to resigning, it could be done quietly and that no one else would know, preventing embarrassment and bad publicity for Mr. Klayman, suggesting that the Defendants would otherwise seek to smear and thus harm Mr. Klayman publicly by destroying his professional and personal reputation. This obviously is a false premise and contrary to the remedies that had been previously recommended to the Board of Professional Responsibility Hearing Committee by ODC in the First Complaint, which fell well short of what was in effect, disbarment.

58.     However, apparently seeing that the hearing committee was recommending three months' suspension with a requirement of petitioning for reinstatement based on a showing of the fitness to practice law, Defendants – acting in concert through Defendant Smith – now outrageously, without factual or legal basis, suggested that resignation would be the easier and less humiliating road for Mr. Klayman to agree to.

59.     Mr. Klayman was confused at the time as to why Defendant Smith would make such a strange and outrageous suggestion, but in retrospect Mr. Klayman has reason to believe,

based on the facts pled herein and additional evidence which will be uncovered in discovery, that it was a warning to Mr. Klayman that there was a concerted effort by his superiors at ODC, including but not limited to Defendants Fox, Herman, and Porter, to remove him from the practice of law and that this was beyond his control, which has now been clearly demonstrated in the Individual Bar Counsel Defendants' actions, acting in concert.

60.     The Individual Bar Counsel Defendants would not even allow Mr. Klayman the courtesy of a meeting with Defendant Fox before rushing to file a Specification of Charges with the Board in the Second Complaint.

61.     This refusal to allow a meeting is also due to the conflict of interest that Defendant Fox claimed to have suffered, for which Defendant Fox was trying to hide.

62.     Indeed, while it was clear that Defendant Fox had been involved in the so-called investigation and prosecution of Mr. Klayman from the very outset, he disingenuously and defensively demanded that Mr. Klayman sign a conflict of interest waiver before finally agreeing to a meeting with Mr. Klayman after the Specification of Charges had already been filed before the Board.

63.     The conflict of interest – which Defendant Fox clearly recognized and admitted – stems from the fact that Defendant Fox, while previously a lawyer and partner at Sutherland, Asbill and Brennan, represented Mr. Klayman's interests when he defended a deposition of his then partner, Herbert Beller, concerning a severance agreement he negotiated for Mr. Klayman, noticed by Judicial Watch, the public interest group which Mr. Klayman founded in 1994 but left to run for the U.S. Senate in his home state of Florida, and which through its president Tom Fitton, had, as retaliation, vindictively complained against Mr. Klayman in the pending matter now before the Court of Appeals for the District of Columbia.

64.     During a May 11, 2018 meeting to discuss the Second Complaint, and the gross prosecutorial misconduct of the Defendants up to that point, for which Mr. Klayman had substantial hard evidence, Defendant Fox acted in an extremely hostile manner towards Mr. Klayman, further confirming the bias and animus against Mr. Klayman due to his political beliefs, activism, speech, and gender.

65.     Mr. Klayman was surprised to find that both Defendant Deputy Bar Counsel Julia Porter and ODC's described investigator, Kevin O'Connor were present in the meeting, which had not been disclosed previously.

66.     From the outset, Defendant Fox immediately and belligerently stated that he was not going to hear anything about or discuss dismissal of the Specification of Charges in the Second Complaint, but that Mr. Klayman could simply produce the evidence of misconduct and unethical and illegal behavior.

67.     Mr. Klayman calmly responded that he would not be dictated to as to what he could discuss. This prompted Defendant Fox to stand up threateningly, lurch towards Mr. Klayman, and scream "this meeting is over." He demanded that Mr. Klayman "leave [his] office."

68.     When Mr. Klayman calmly got up from his chair, he indicated that this gross prosecutorial misconduct would leave him no recourse but to file complaints in the courts, as well as bar grievances.

69.     Defendant Fox then approached Mr. Klayman at the door, as if to stalk him and screamed, "I welcome your complaint," adding in a hostile voice showing great animus, "do you seriously believe that I would not welcome the opportunity through discovery to show how you practice law?"

70.    This more than confirms Defendants' improper motivations, that the mission of Defendants is to unlawfully attempt to remove Mr. Klayman from the practice of law, by whatever unprofessional, unethical, unconstitutional, and illegal means are used to "justify" these ends.

71.    As another example, ODC quickly, improperly, and unethically disposed of a valid and meritorious complaint filed by Mr. Klayman against Paul Orfanedes ("Mr. Orfanedes"), Judicial Watch's litigation director, centered around Mr. Orfanedes' participation in a misappropriation of $1.4 million dollars of donor money.

72.    In fact, Defendant Herman admitted that this complaint was summarily dismissed, less than a month after it was received, and it was never even processed or opened for a full investigation, despite the uncontroverted fact that Mr. Orfanedes, a member of the bar of the District of Columbia, had participated in the outright theft of $1.4 million dollars of donor money over 15 years.

73.    On the other hand, the clearly non-meritorious Second Complaint, which was not based in law or fact (which has been demonstrated to Defendants through sworn affidavits and the summary dismissal of The Florida and Pennsylvania Bar complaints), has been pending against Mr. Klayman for now about eight years, a condition that would not be permitted in other jurisdictions and should not be countenanced in this one, due to ordinary norms of laches, statute of limitations, fundamental fairness, due process and equal protection under the Constitution.

74.    This striking dichotomy is clear evidence of unconstitutional and illegal selective prosecution, bias, and personal animus that must be remedied.

75.    As a result of Defendants' prosecutorial misconduct, Mr. Klayman has been damaged by his having to expend significant time and resources defending himself against

baseless prosecutions and harassment, including but not limited to attorney's fees, costs, travel and other expenses, as well as personal and professional time lost preparing for his own defense. It has also damaged Mr. Klayman by intentionally causing him severe emotional distress. Defendants' prosecutorial misconduct has been carefully and cynically calculated to bankrupt Mr. Klayman, so that he is no longer able to practice law or engage in his public interest advocacy, which Defendants do not agree with and in fact despise. Defendants' intent is to smear Mr. Klayman and fatally damage his personal and professional reputations, affecting his family and livelihood, which damage has already occurred and is continuing and in fact increasing in severity.

76.     As a matter of last resort, in an attempt to preserve what was left of his constitutional due process and other rights, Mr. Klayman thus filed ethical complaints with ODC setting forth the gross misconduct by the the Individual Bar Counsel Defendants.

77.     On June 5, 2018 and thereafter, the chair of the Board of Professional Responsibility, Robert C. Bernius, incredibly informed Mr. Klayman that the Board will not pursue any remedial action, much less open an internal investigation of the alleged prosecutorial misconduct and violation of ethics, the law, and the Constitution.

78.     Mr. Klayman has also asked the District of Columbia Bar's general counsel, president, and chief executive officer, Marlon Paz, Defendant Lim, and Robert Spanoletti, respectively, to internally review the unethical, unconstitutional, and illegal conduct of the Individual Bar Counsel Defendants and they have failed to take action in furtherance of this apparent "cover up" to protect their own, with a "circle the wagons" mentality, motivation, and practice.

79.     Thus, in refusing to discipline, or even investigate the conduct of the Individual Bar Counsel Defendants, Defendant Lim and the DC Bar are equally complicit in their illegal and unconstitutional actions, as they have ratified and adopted their misconduct and unlawful acts.

## FIRST CAUSE OF ACTION
### *Abuse of Process*
### Against All Defendants

80.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including, but not limited to, the Introduction and the exhibits to this Complaint, with the same force and effect, as if fully set forth herein again at length.

81.     Defendants, each and every one of them acting in concert, have abused and perverted the Board of Professional Responsibility's process in initiating, furthering, and falsely deciding claims of misconduct in order to compel Mr. Klayman to be prevented and ultimately barred from practicing law due to Mr. Klayman's political beliefs, activism, free speech, and gender.

82.     As set forth previously, this concerted effort to disbar Mr. Klayman is evidenced by the fact that Defendants have initiated the Bundy Complaint, while on notice of pending appeals regarding the matter, which, in any event, indisputably lack the clear and convincing evidence of misconduct necessary to substantiate the claims.

83.     Defendants conduct is a deliberate misuse of the Board of Professional Responsibility's judicial process for all of the reasons set forth in this Complaint and its preceding paragraphs, as well as the exhibits hereto.

## SECOND CAUSE OF ACTION
### *Malicious Prosecution*
### Against All Defendants

84.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including, but not limited to, the Introduction and the exhibits to this Complaint, with the same force and effect, as if fully set forth herein again at length.

85.     Defendants had no reasonable basis in fact or law to file a Specification of Charges with the Board of Professional Responsibility in the Bundy Complaint, much less the clear and convincing evidence needed to substantiate their claims, given the fact that Judge Gould had expressly found that Mr. Klayman had been truthful, yet proceeded to do so anyway due to Mr. Klayman's political beliefs, activism, speech, and gender.

86.     Defendant fraudulently induced a Board member to sign off on this initiation, contrary to fact or law as alleged herein.

87.     Defendants acted maliciously in prosecuting Mr. Klayman, without probable cause, due solely to Mr. Klayman's political beliefs, activism, free speech, and gender.

**THIRD CAUSE OF ACTION**
*42 U.S.C. 1983 - Violation of Fourteenth Amendment Equal Protection*
**Against Defendants Lim, Fox, Herman, Smith, and Porter**

88.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including, but not limited to, the Introduction and the exhibits attached to this Complaint, with the same force and effect, as if fully set forth herein again at length.

89.     The Individual Defendants, as attorneys employed by ODC, the chief prosecutor for attorney disciplinary matters involving active or inactive attorneys who are members of the D.C. Bar, at all relevant times were acting in concert under the color of state law.

90.     The Individual Defendants, acting in concert and conspiring in their individual capacities, outside of the scope of their official duties of the District of Columbia Rules of

Professional Responsibility and the Constitution, conspired to violate Mr. Klayman's constitutional, statutory, and other common law rights, and did in fact violate those rights.

91.     Intentionally violating an individual's constitutional rights is not within the scope of the Individual Defendants' official duties.

92.     The Fourteenth Amendment to the Constitution prohibits states from denying any person within its territory equal protection of the laws.

93.     Under the color of state law, the Individual Defendants have deprived Mr. Klayman of his federal, constitutional right to equal protection under the laws by selectively prosecuting him for his gender, public interest advocacy, and free speech without a legitimate or any basis in fact or law.

**FOURTH CAUSE OF ACTION**
*42 U.S. C. 1983 - Violation of First Amendment Protections*
**Against Defendants Lim, Fox, Herman, Smith, and Porter**

94.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including, but not limited to, the Introduction and the exhibits attached to this Complaint, with the same force and effect, as if fully set forth herein again at length.

95.     The Individual Defendants as attorneys employed by ODC, the chief prosecutor for attorney disciplinary matters involving active or inactive attorneys who are members of the D.C. Bar, at all relevant times were acting in concert under the color of state law.

96.     The Individual Defendants, acting in concert in their individual capacities, outside of the scope of their official duties, conspired to violate Mr. Klayman's constitutional, statutory, and other rights, and did in fact violate those rights.

97.     Intentionally violating an individual's constitutional rights is not within the scope of the Individual Defendants' official duties.

98.     The First Amendment to the Constitution prohibits states and state entities and agencies from abridging freedom of speech.

99.     Under the color of state law, the Individual Defendants have deprived Mr. Klayman of his federal, constitutional right to freedom of speech by selectively prosecuting him without any basis in fact or law to remove him from the practice of law due to his politics, conservative activism, free speech, and gender, and this conduct is continuing.

100.    The Individual Defendants, acting in concert, are trying to unethically, unconstitutionally, and illegally attempt to disbar Mr. Klayman, so that he is no longer able to pursue his conservative, public interest work, in effect silencing his public interest activism and free speech in furtherance of removing Mr. Klayman from public discourse, as guaranteed by the First Amendment.

**FIFTH CAUSE OF ACTION**
*Fraud*

101.    Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including, but not limited to, the Introduction and the exhibits attached to this Complaint, with the same force and effect, as if fully set forth herein again at length.

102.    Defendants fraudulently induced a member of the Board to sign off on the Specification of Charges in order to further their improper goal to have Mr. Klayman removed from the practice of law, when they knew that there were pending appeals to the Supreme Court and the Ninth Circuit and when they knew that there was no clear and convincing evidence, much more any basis in fact or law to initiate the Bundy Complaint.

103.    Defendants withheld this material information and evidence to fraudulently induce a member of the Board to sign off on the Bundy Complaint

104.    This fraud occurred on or around August 20, 2018in Washington, D.C., when the Specification of Charges in the Bundy Complaint was forwarded to the Board member.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Klayman prays for relief and judgment against Defendants jointly and severally as follows:  actual, compensatory, and punitive damages in an amount to be determined by the trier of fact, in an amount no less than $75,000 and in an amount in excess of $9,500,000, as well as preliminary and permanent injunctive relief, attorney's fees and costs, and any other relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts, as to all issues so triable.


DATED: September 24, 2018                          Respectfully submitted,


                                                   /s/ Larry Klayman
                                                   Larry Klayman, Esq.
                                                   KLAYMAN LAW GROUP, PA
                                                   c/o 7050 W. Palmetto Park Road
                                                   #15-287
                                                   Boca Raton, FL 33433
                                                   Email: leklayman@gmail.com
                                                   Tel: 561-558-5563
                                                   *Counsel for Plaintiff*