# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LARRY KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:18-01579 (RDM) |
| | ) | |
| v. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| | ) | |
| | ) | |
| HAMILTON FOX *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' MOTION TO DISMISS**

Defendants Office of Disciplinary Counsel, Hamilton P. Fox, III, Elizabeth A. Herman, H. Clay Smith, III, and Julia L. Porter, through undersigned counsel, hereby move the Court to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for the reasons set forth in the accompanying Memorandum in Support of Defendants' Motion to Dismiss. A proposed order is filed with this motion.

Respectfully submitted,

/s/ Mark J. MacDougall
Mark J. MacDougall (D.C. Bar No. 398118)
Connor Mullin (D.C. Bar No. 981715)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Tel: (202) 887-4000 | Fax: (202) 887-4288
mmacdougall@akingump.com
cmullin@akingump.com

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,             )
                                 )
                 Plaintiff,     )     Civil Action No. 1:18-01579 (RDM)
                                 )
          v.                   )     ORAL ARGUMENT REQUESTED
                                 )
                                 )
HAMILTON FOX *et al.*,    )
                                 )
               Defendants.   )

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................2

    A.    The attorney disciplinary system in the District of Columbia ....................................2

    B.    Disciplinary proceedings involving Plaintiff .............................................................3

        1.    The Judicial Watch Complaint, Bar Docket No. 2008-D048 .......................... 3

        2.    The Sataki Complaint, Bar Docket No. 2011-D028 ........................................ 6

        3.    The *Pro Hac Vice* Matter, Disciplinary Docket No. 2017-D051 .................... 7

    C.    This lawsuit. ................................................................................................................9

LEGAL STANDARD...............................................................................................................10

ARGUMENT .........................................................................................................................11

I.    The Court should rely on the *Younger* abstention doctrine to dismiss this case in its entirety.....................................................................................................................11

    A.    All of the requirements for *Younger* abstention are met here....................................12

    B.    Plaintiff has not alleged "extraordinary circumstances" that might warrant federal intervention. ...................................................................................................13

II.    Individual Defendants are protected by absolute immunity and the Office of Disciplinary Counsel is not an entity that can be sued. .....................................................16

    A.    Individual Defendants enjoy absolute judicial immunity in connection with the alleged conduct. ...................................................................................................16

    B.    The Office of Disciplinary Counsel is not a proper party for suit. ...........................18

III.    Plaintiff fails to state a claim upon which relief can be granted.......................................19

CONCLUSION.......................................................................................................................23

# TABLE OF AUTHORITIES

**CASES:**

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ............................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................10, 11, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................10

*Blue v. District of Columbia*,
   811 F.3d 14 (D.C. Cir. 2015) ............................................................................10

*Borum v. Brentwood Vill., LLC*,
   218 F. Supp. 3d 1 (D.D.C. 2016) ............................................................................10

*Bown v. Hamilton*,
   601 A.2d 1074 (D.C. Cir. 1992) ............................................................................22

*Bradley v. DeWine*,
   55 F. Supp. 3d 31 (D.D.C. 2014) ............................................................................10

*Branch Ministries v. Rossotti*,
   211 F.3d 137 (D.C. Cir. 2000) ............................................................................20

*Bridges v. Kelly*,
   84 F.3d 470 (D.C. Cir. 1996) ............................................................................11

*Briggs v. Goodwin*,
   569 F.2d 10 (D.C. Cir. 1977) ............................................................................17

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ............................................................................10

*Bundy v. United States Dist. Court*,
   840 F.3d 1034 (9th Cir. 2016) ............................................................................8

*Burns v. Reed*,
   500 U.S. 478 (1991) ............................................................................17

*City of Clerburne v. Clerburne Living Ctr., Inc.*,
   473 U.S. 432 (1985) ............................................................................20

* Authorities chiefly relied upon are marked with asterisks.

*Cook v. Babbitt,*
    819 F. Supp. 1 (D.D.C. 1993) ........................................................................... 20

*Cunningham v. Dist. of Columbia,*
    584 A.2d 573 (D.C. 1990) ............................................................................... 16

*D.C. Court of Appeals v. Feldman,*
    460 U.S. 462 (1983) ......................................................................................... 12

*Feingold v. Office of Disciplinary Counsel,*
    487 F. App'x 743 (3d Cir. 2012) ..................................................................... 15

*\*Ford v. Tait,*
    163 F. Supp. 2d 57 (D.D.C. 2001) ..................................................... 11, 12, 13

*Gibson v. Berryhill,*
    411 U.S. 564 (1973) ......................................................................................... 11

*Goldfarb v. Va. State Bar,*
    421 U.S. 773 (1975) ......................................................................................... 12

*Henok v. Dist. of Columbia,*
    58 F. Supp. 3d 93 (D.D.C. 2014) ..................................................................... 19

*In re Bernstein,*
    774 A.2d 309 (D.C. 2001) ................................................................................. 7

*In re Mason,*
    916 F.2d 384 (7th Cir. 1990) ........................................................................... 14

*Kugler v. Helfant,*
    421 U.S. 117 (1975) ......................................................................................... 13

*Kundrat v. Dist. of Columbia,*
    106 F. Supp. 2d 1 (D.D.C. 2000) ..................................................................... 19

*Lawrence v. Carlin,*
    541 F. Supp. 2d 189 (D.D.C. 2008) ........................................................... 14, 15

*Lempert v. Power,*
    45 F. Supp. 3d 79 (D.D.C. 2014) ..................................................................... 10

*Lewellen v. Raff,*
    843 F.2d 1103 (8th Cir. 1988) ......................................................................... 14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................... 11

*Marin v. Comm. on Admissions*,
  No. 98-cv-0059, 1998 WL 1181013 (D.D.C. Nov. 9, 1998) ...................................................19

*\*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ....................................................................................................11, 12, 13

*Newman v. Dist. of Columbia Courts*,
  125 F. Supp. 3d 95 (D.D.C. 2015) .........................................................................................19

*\*Nwachukwu v. Rooney*,
  362 F. Supp. 2d 183 (D.D.C. 2005) ............................................................................... *passim*

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447 (1978) ................................................................................................................21

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987) ....................................................................................................................13

*Pitt v. Dist. of Columbia*,
  491 F.3d 494 (D.C. Cir. 2007) ................................................................................................23

*Rehberg v. Paulk*,
  566 U.S. 356 (2012) ................................................................................................................16

*Richardson v. Dist. of Columbia*,
  711 F. Supp. 2d 115 (D.D.C. 2010) ................................................................................12, 17

*Scott v. Dist. of Columbia*,
  101 F.3d 748 (D.C. Cir. 1996) ................................................................................................22

*\*Thomas v. Knight*,
  257 F. Supp. 2d 86 (D.D.C. 2003) ....................................................................................17, 18

*United States v. Armstrong*,
  517 U.S. 456 (1996) ................................................................................................................20

*United States v. Mangieri*,
  694 F.2d 1270 (D.C. Cir. 1982) ..............................................................................................23

*United States v. Philip Morris Inc.*,
  116 F. Supp. 2d 131 (D.D.C. 2000) ..........................................................................................3

*United States v. Wash.*,
  705 F.2d 489 (D.C. Cir. 1983) ................................................................................................20

*\*Yelverton v. Fox*,
  997 F. Supp. 2d 1 (D.D.C. 2013) ...........................................................................12, 13, 15, 22

iv

*Younger v. Harris*,
  401 U.S. 37 (1971) .......................................................................................... *passim*

**STATUTES:**

28 U.S.C.
  § 1257(a) ...................................................................................................... 13
  § 1257(b) ...................................................................................................... 13
  § 1367(c)(3) .................................................................................................. 22

**OTHER AUTHORITIES:**

D.C. Bar. R. XI
  § 4 .................................................................................................................. 2
  § 4(e)(2) ........................................................................................................ 2
  § 4(e)(4) ........................................................................................................ 2
  § 4(e)(5) ........................................................................................................ 2
  § 5(a) ............................................................................................................. 2
  § 5(c)(2) ........................................................................................................ 3
  § 6 .................................................................................................................. 2
  § 6(a) ............................................................................................................. 2
  § 6(a)(1) ....................................................................................................... 18
  § 6(a)(4) ....................................................................................................... 18
  § 9(b) ............................................................................................................. 3
  § 9(c) ............................................................................................................. 3
  § 9(d) ............................................................................................................. 3
  § 9(e) ............................................................................................................. 3
  § 9(h) ............................................................................................................. 3
  § 19(a) ..................................................................................................... 2, 16

RESTATEMENT (SECOND) OF TORTS § 682 cmt.b ...................................................... 22

Defendants Office of Disciplinary Counsel, Hamilton P. Fox, III, Elizabeth A. Herman, H. Clay Smith, III, and Julia L. Porter, through undersigned counsel, respectfully submit this Memorandum in Support of Motion to Dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Based on the arguments and law set forth in this memorandum, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

## PRELIMINARY STATEMENT

*Pro se* attorney Larry Klayman has asked the Court to intervene in three ongoing D.C. Court of Appeals attorney disciplinary proceedings and adjudicate matters within the exclusive province of that court, namely the conduct and discipline of lawyers subject to the jurisdiction of the D.C. Court of Appeals. The Defendants named in the Amended Complaint are the Office of Disciplinary Counsel (an entity not subject to suit), Hamilton P. Fox, III, who was appointed Disciplinary Counsel last year by the D.C. Board on Professional Responsibility (the "Board"), former Deputy Disciplinary Counsel Elizabeth A. Herman, Deputy Disciplinary Counsel Julia L. Porter, and Assistant Disciplinary Counsel H. Clay Smith, III (the "Individual Defendants").

This Court has uniformly dismissed under the *Younger* abstention and related doctrines indistinguishable attempts to collaterally attack state attorney disciplinary proceedings in federal court. Setting aside the serious prudential concerns raised by this case, this Court has consistently held that Office of Disciplinary Counsel lawyers are protected from suit by absolute judicial immunity where, as here, nothing in the Amended Complaint suggests that the lawyers who acted on behalf of the Office of Disciplinary Counsel did so other than in their official capacities and in the course of their official duties. To the extent the Court reaches the Amended Complaint's legal sufficiency, all four of the causes of action warrant dismissal for failure to state a claim.

# BACKGROUND

## A.      The attorney disciplinary system in the District of Columbia

The D.C. Court of Appeals established the Board and the Office of Disciplinary Counsel (formerly the Office of Bar Counsel), which serves as the chief prosecutor for disciplinary matters involving attorneys subject to the disciplinary jurisdiction of the D.C. Court of Appeals.  *See* D.C. Bar R. XI, §§ 4, 6.  The Board has authority to appoint "Disciplinary Counsel, Special Disciplinary Counsel, and such assistant disciplinary counsel and staff as may be required to perform the duties and functions of that office."  D.C. Bar R. XI, § 4(e)(2).  Disciplinary Counsel serve at the pleasure of the Board and subject to the oversight authority of the D.C. Court of Appeals.  *See id.*  Under D.C. Bar Rule XI, § 19(a),

> Members of the Board, its employees, members of Hearing Committees, Disciplinary Counsel, and all assistants and employees of Disciplinary Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring *shall be immune from disciplinary complaint under this rule and from civil suit for any conduct in the course of their official duties*. (emphasis added).

The Office of Disciplinary Counsel is responsible for investigating attorney misconduct and prosecuting disciplinary matters before (i) the Board-appointed Hearing Committee,[1] (ii) the Board, and (iii) the D.C. Court of Appeals.  *See* D.C. Bar R. XI, §§ 5(a), 6(a).  An attorney member of the Hearing Committee (referred to as the "Contact Member") "review[s] and approve[s] or suggests modifications of recommendations by Disciplinary Counsel for dismissals, informal admonitions, and the institution of formal charges."  D.C. Bar R. XI, § 4(e)(5).  The Hearing Committee has the power and duty to conduct hearings on formal charges and "submit their findings and recommendations on formal charges of misconduct to the Board."  D.C. Bar R. XI, §

---

[1] Each Hearing Committee consists of two members of the Bar and one non-lawyer.  *See* D.C. Bar R. XI, § 4(e)(4).

5(c)(2).  Once the Hearing Committee provides a recommendation to the Board, the attorneys for

both sides may file exceptions to the Hearing Committee's recommendation.  *See* D.C. Bar R. XI,

§ 9(b).  Generally, the Board may either adopt or modify the recommendation of the Hearing

Committee and submit a Report and Recommendation to the D.C. Court of Appeals.  *See* D.C. Bar

R. XI, § 9(c), (d).  Both sides may file exceptions to the Board's Report and Recommendation with

the D.C. Court of Appeals, which issues a final order after considering the recommendation and

any exceptions filed by the parties.  *See* D.C. Bar R. XI, § 9(e), (h).

## B.    Disciplinary proceedings involving Plaintiff[2]

Plaintiff states in the Amended Complaint that he is the subject of three ongoing

disciplinary proceedings involving his practice of law in the District of Columbia.  The following

summary of those proceedings is based on the relevant charging documents filed by the Office of

Disciplinary Counsel, as well as the Report and Recommendation of the Board in the proceeding

that has progressed to that stage.[3]

### 1.    The Judicial Watch Complaint, Bar Docket No. 2008-D048[4]

On November 15, 2012, the Office of Disciplinary Counsel submitted proposed charges

against Plaintiff, alleging that he repeatedly violated the "former client" conflict of interest

provisions of Rule 1.9 of the D.C. Rules of Professional Conduct (as well as the analogous Florida

rule), when he represented individual clients in three lawsuits against Judicial Watch, Inc.—a

---

[2] This background information is limited to Plaintiff's disciplinary proceedings in the District of Columbia.

[3] These public records are matters subject to judicial notice and are appropriately considered at the motion to dismiss stage.  *See United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 154 (D.D.C. 2000).  Accordingly, those documents are attached as exhibits for the Court's reference.

[4] Plaintiff references the Judicial Watch Complaint at Paragraphs 46-48 and 58 of the Amended Complaint.

nonprofit organization where Plaintiff was previously employed as General Counsel.  *See In the Matter of Larry E. Klayman*, Board Docket No. 13-BD-084, Bar Docket No. 2008-D048, R. & R. of the Board on Professional Responsibility 1 (Feb. 6, 2018), attached as Exhibit 1.[5]  Plaintiff was further charged with "serious[] interfer[ence] with the administration of justice" in violation of Rule 8.4(d) for allegedly (i) forcing his former client to move for his disqualification and (ii) responding to his former client's motion with meritless arguments.  *See id.*  On September 27, 2013, a Contact Member of the Hearing Committee approved the charges.

On June 23, 2014, Plaintiff signed an affidavit stipulating to the facts in a petition for negotiated discipline and accepted full responsibility for conduct described in the negotiated petition as violations of Rule 1.9 (conflict of interest) and Rule 8.4(d) (conduct seriously interfering with administration of justice).  *See In the Matter of Larry E. Klayman*, Disciplinary Docket No. 2017-D051, Specification of Charges ¶ 3 (Aug. 21, 2018), attached as Exhibit 2.  He further agreed to a public censure for his conduct.  *See id.*  However, following a hearing on the petition for negotiated discipline, the Hearing Committee rejected the petition and issued an order that the public censure was "unduly lenient."  *Id.* at ¶ 4.

On August 31, 2015, the Board reassigned the previously-filed charges against Plaintiff to another Ad Hoc Hearing Committee.  *See id.* at ¶ 6.  On June 19, 2017, the new Hearing Committee sustained all of the charges against Plaintiff and further concluded that he falsely claimed to have relied on advice of counsel in defense of his appearance in one of the lawsuits involving his former client.  *See* Ex. 1 at 16.  The Hearing Committee recommended that Plaintiff be suspended for 90

---

[5] A copy of the Board's Report and Recommendation, as well as the Hearing Committee's Report and Recommendation in this matter can be found at http://www.dcbar.org/attorney-discipline/disciplinary-decisions.cfm.

days, with readmission predicated upon a "fitness requirement" or a showing that he is fit to practice law. *See id.* at 1.

On February 6, 2018, the Board found that the Hearing Committee's factual findings were supported by substantial evidence, with the exception of a finding that Plaintiff provided false testimony in his brief and during a proceeding before the Hearing Committee. *See id.* at 2. With respect to Plaintiff's advice of counsel defense, the Board (i) noted that Plaintiff's co-counsel in one of the Judicial Watch lawsuits was unable to recall certain conversations and (ii) concluded that the Office of Disciplinary Counsel failed to prove that Plaintiff made a false statement by clear and convincing evidence. *Id.* at 16-17. While the Board stated that "this case presents a close question" and Plaintiff "acted improperly" by "forc[ing] Judicial Watch to move for his disqualification," the Board was "unable to conclude that [Plaintiff's] behavior sufficiently tainted the judicial process to a degree adequate to sustain the Rule 8.4(d) charge." *Id.* at 13-15. The Board further declined to give "much weight" to Plaintiff's prior discipline in Florida, where he failed to pay his client $5,000 for more than two years, concluding that Plaintiff's delayed payment followed an auto accident and financial difficulties. *Id.* at 17-18.

The Board declined to impose a fitness requirement, but adopted the recommended 90-day suspension, concluding that Plaintiff's "misconduct was not isolated, innocent, or inadvertent" and was "motivated by animus toward Judicial Watch." *Id.* at 18-19. The Board held that Plaintiff "switched sides," "represent[ing] three individuals after representing Judicial Watch in the same matters involving those same three people. This vindictiveness strikes at the very heart of the attorney-client relationship, and deserves a serious sanction of ninety-day suspension." *Id.* at 18-20. The Office of Disciplinary Counsel has filed an assignment of error. The matter is fully briefed before the D.C. Court of Appeals as the parties await an order scheduling oral argument.

## 2.    The Sataki Complaint, Bar Docket No. 2011-D028[6]

On July 20, 2017, the Office of Disciplinary Counsel filed charges against Plaintiff stemming from his representation of Ms. Elham Sataki in a number of lawsuits.  *See In the Matter of Larry E. Klayman*, Bar Docket No. 2011-D028, Specification of Charges ¶ 2 (July 20, 2017), attached as Exhibit 3.  The Office of Disciplinary Counsel alleged that after "Ms. Sataki declined [Plaintiff's] entreaties to establish a romantic relationship . . . [he] informed Ms. Sataki that he would change the terms of their contingent fee arrangement." *Id.* at ¶¶ 3-7.  In another lawsuit filed on Ms. Sataki's behalf, Plaintiff filed "a motion to disqualify the judge presiding over Ms. Sataki's case . . . alleg[ing] that the presiding judge, Colleen Kollar-Kotelly, who had been appointed by United States President William Jefferson Clinton, was biased against him because he had filed several lawsuits against the former President and the former First Lady, Hillary Rodham Clinton." *Id.* at ¶¶ 10-16.  The motion to disqualify was allegedly not authorized by the client and was "inconsistent with Ms. Sataki's request that [Plaintiff] pursue her case simply and quietly." *Id.* at ¶ 14.  In another lawsuit filed on Ms. Sataki's behalf, Plaintiff allegedly filed against the wishes of his client a motion to have the matter reassigned from the docket of Judge Kollar-Kotelly, as well as a number of motions after Ms. Sataki allegedly terminated him as her lawyer.  *See id.* at ¶¶ 21-33.  Plaintiff is further alleged to have violated the duty of confidentiality by contributing to a series of articles published by WorldNetDaily that disclosed facts gained during the course of his representation of Ms. Sataki, who allegedly did not authorize and was embarrassed by the disclosures.  *See id.* at ¶¶ 36-47.

Between May 30, 2018 and June 27, 2018, the Hearing Committee conducted several days of hearings.  At the close of the hearings, the Hearing Committee issued a preliminary finding that

---

[6] This proceeding is referenced in the Amended Complaint at Paragraphs 65 and 84.

Plaintiff violated at least one of the D.C. Bar Rules.  Once such a finding is made, the Office of

Disciplinary Counsel may offer evidence in aggravation, including the prior disciplinary history

of the respondent.  On August 24, 2018, the Office of Disciplinary Counsel filed a post-hearing

brief.  Subject to any requested extensions, Plaintiff's brief is currently due October 12, 2018 and

the Office of Disciplinary Counsel's reply brief is due October 26, 2018.  At this time, it is difficult

to predict with any degree of accuracy when the Hearing Committee will submit a Report and

Recommendation to the Board.[7]

### 3.    The *Pro Hac Vice* Matter, Disciplinary Docket No. 2017-D051[8]

On August 21, 2018, the Office of Disciplinary Counsel filed additional charges against

Plaintiff stemming from his request for *pro hac vice* admission on behalf of Cliven Bundy in a

criminal case in the U.S. District Court for the District of Nevada.  *See* Ex. 2 at ¶¶ 10-12.  Plaintiff's

verified petition for admission stated that the above-described Judicial Watch Complaint "is likely

to be resolved in my favor and there has been no disciplinary action."  *Id.* at ¶ 19.  As described

above, Plaintiff had previously signed an affidavit in the Judicial Watch Complaint, stipulating to

the facts in a petition for negotiated discipline and accepting full responsibility for violations of

Rule 1.9 and Rule 8.4(d).  On March 31, 2016, the district court denied without prejudice Plaintiff's

petition for admission *pro hac vice* "for failure to fully disclose disciplinary actions and related

documents," concluding that his petition was "misleading and incomplete."  *Id.* at ¶ 19.

On April 7, 2016, Plaintiff filed a "Supplement to and Renewed Verified Petition" for

permission to practice in U.S. District Court in Nevada.  *Id.* at ¶ 21.  On April 19, 2016, the court

---

[7] While the Hearing Committee's report is due 120 days after the conclusion of the hearing under D.C. Bar Rule XI, § 9(a), this rule is "directory, rather than mandatory."  *In re Bernstein*, 774 A.2d 309, 316 n.14 (D.C. 2001).

[8] Plaintiff refers in the Amended Complaint to this matter as the "additional bar proceeding."  Am. Compl. ¶¶ 47, 64.

denied Plaintiff's request, ordering that "Klayman's Verified Petition shall remain denied without prejudice until such time as Klayman can provide proof that the ethical disciplinary proceeding in the District of Columbia has been resolved in his favor." *Id.* at ¶ 22.

A few weeks later, Mr. Bundy filed a Bivens action against Chief Judge Gloria Navarro, Senator Harry Reid, Senator Reid's son, and President Obama for allegedly conspiring against Mr. Bundy for, among other things, denying Plaintiff's application for *pro hac vice* admission. *See id.* at ¶ 23. Mr. Bundy further filed a motion to disqualify Chief Judge Navarro. *Id.* at ¶ 24. Plaintiff did not sign the Bivens complaint against the district judge and others, but was listed as "of counsel" on subsequent pleadings filed on behalf of Mr. Bundy in the Bivens action. *Id.* at ¶ 25.

Beginning on July 6, 2016, Plaintiff filed a series of petitions for writ of mandamus with the U.S. Court of Appeals for the Ninth Circuit, seeking an order compelling the district court to admit him *pro hac vice*. *See id.* at ¶¶ 27-52. On October 28, 2016, the Ninth Circuit denied Plaintiff's request for mandamus relief, concluding:

> Klayman has made misrepresentations and omissions to the district court regarding the ethics proceedings before the District of Columbia Bar; he has shown a pattern of disregard for local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial process by suing the district judge personally. By any standard, the district court properly denied his petition to be admitted *pro hac vice*. Bundy is entitled to a fair trial, defended by competent, vigorous counsel of his choosing. But his right to such counsel does not extend to counsel from outside the district who has made it a pattern or practice of impeding the ethical and orderly administration of justice.

*Id.* at ¶ 29 (citing *Bundy v. United States Dist. Court* (In re Bundy), 840 F.3d 1034, 1049 (9th Cir. 2016)).

As described above, on June 19, 2017, the Hearing Committee issued a report in the Judicial Watch Complaint, finding that Plaintiff violated Rules 1.9 and 8.4(d) and recommending a 90-day suspension with a fitness requirement. *See id.* at ¶ 44. On February 6, 2018, the Board

issued its report recommending a 90-day suspension without a fitness requirement. *Id.* ¶ at 45. The same day, Plaintiff filed his fourth petition for writ of mandamus with the Ninth Circuit, accusing Judge Jay S. Bybee of extrajudicial bias and prejudice. *See id.* at ¶ 46. In support of his argument, Plaintiff alleged that "[t]he fact remains, however, that Mr. Klayman has never once been found to have acted unethically by any bar association who reviewed his conduct before a judge." *Id.* at ¶ 48 (alteration in original).

The Office of Disciplinary Counsel alleges that "[w]hen [Plaintiff] made this statement, he knew that the Hearing Committee had found by clear and convincing evidence that he had violated Rule 1.9 in three matters, and Rule 8.4(d) in one of those matters." *Id.* at ¶ 48. The Office of Disciplinary Counsel further alleges, among other allegations, that Plaintiff "knowingly made false statements of fact or material fact" in connection with his applications for admission in the Nevada district court. *Id.* at ¶ 53(c). The charges were recently approved by a Contact Member of the Hearing Committee.

## C.     This lawsuit.

On July 3, 2018, Plaintiff filed the instant lawsuit. (ECF No. 1). On August 6, 2018, Plaintiff filed an Amended Complaint, alleging that the Office of Disciplinary Counsel—as well as Disciplinary Counsel Hamilton P. Fox, III, Deputy Disciplinary Counsel Julia L. Porter, former Deputy Disciplinary Counsel Elizabeth A. Herman, and Assistant Disciplinary Counsel H. Clay Smith, III, in their individual capacities—violated Plaintiff's "constitutional and other rights by selectively prosecuting [him] because of his political activism, free speech, and gender." Am. Compl. ¶ 39 (ECF No. 10). Plaintiff asserts with respect to "All Defendants" two common law tort claims of abuse of process and malicious prosecution. *See id.* at 21-23. The Amended

Complaint asserts against the Individual Defendants two federal causes of action under 42 U.S.C. § 1983 for alleged equal protection and First Amendment violations.  *See id.* at 23-25.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009) (alterations in original) (citation omitted).  The Court need not accept as true legal conclusions disguised as factual allegations, "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (alteration in original) (internal quotation marks omitted).  The facial plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  An attorney proceeding *pro se* is "presumed to have knowledge of the legal system" and "is not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation."  *Lempert v. Power*, 45 F. Supp. 3d 79, 81 n.2 (D.D.C. 2014).

With respect to a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction,[9] "[t]he party invoking federal jurisdiction bears the burden of establishing" each of

---

[9] While this Court has held that *Younger* abstention is non-jurisdictional in nature and is appropriately addressed in the context of Rule 12(b)(6), *see Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 13 (D.D.C. 2016), this Court has on occasion analyzed *Younger* abstention in the context of Rule 12(b)(1).  Moreover, as described below, to the extent the Court dismisses this action under the *Rooker-Feldman* doctrine, those arguments *are* jurisdictional and concern whether a court has subject-matter jurisdiction over the case at all.  *See Bradley v. DeWine*, 55 F.

the elements of Article III standing, although "the manner and degree of evidence required" varies

with "the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"At the pleading stage, general factual allegations of injury resulting from the defendant's

conduct" will often suffice. *Id.* However, "[t]hreadbare recitals of the elements of [a cause of

action], supported by mere conclusory statements," will not. *Arpaio v. Obama*, 797 F.3d 11, 19

(D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (first alteration in original). The Court need not

"assume the truth of legal conclusions" nor must it "accept inferences that are unsupported by the

facts set out in the complaint." *Id.* (internal quotation marks and citation omitted).

## ARGUMENT

**I.     The Court should rely on the *Younger* abstention doctrine to dismiss this case in its entirety.**

In *Younger v. Harris*, 401 U.S. 37, 54 (1971), the Supreme Court held that the abstention[10]

doctrine precludes enforcement of a state criminal statute by a federal court when state-court

enforcement proceedings are pending in state court. The Supreme Court extended the doctrine to

state civil enforcement proceedings that (1) constitute ongoing judicial proceedings, (2) implicate

important state interests, and (3) afford an adequate opportunity to raise federal claims. *See*

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). This Court

has repeatedly concluded that ongoing disciplinary proceedings under the jurisdiction of the D.C.

Court of Appeals are the exact type of state proceeding that requires dismissal under *Younger*.

---

Supp. 3d 31, 41 (D.D.C. 2014). Accordingly, Defendants move to dismiss the Amended
Complaint pursuant to both Rule 12(b)(6) and Rule 12(b)(1).

[10] While referred to as *Younger* "abstention," the doctrine does not merely postpone a
federal court's adjudication of a case, but requires "outright dismissal of the federal suit, and the
presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill*, 411 U.S.
564, 577 (1973). *See also Ford v. Tait*, 163 F. Supp. 2d 57, 62 n.2 (D.D.C. 2001) (citing *Bridges
v. Kelly*, 84 F.3d 470, 475 n.7 (D.C. Cir. 1996)).

A. **All of the requirements for *Younger* abstention are met here.**

First, there is no question that the three state-court disciplinary proceedings—which are pending at various stages of the D.C. Court of Appeals attorney disciplinary process[11]—constitute ongoing judicial proceedings.[12] *Middlesex*, 457 U.S. at 433 (concluding that New Jersey's attorney disciplinary proceedings constitute ongoing state judicial proceedings); *Yelverton v. Fox*, 997 F. Supp. 2d 1, 5-6 (D.D.C. 2013) (D.C. attorney disciplinary proceedings constitute ongoing judicial proceedings); *Ford v. Tait*, 163 F. Supp. 2d 57, 64-66 (D.D.C. 2001) (same).

Second, the Supreme Court has expressly identified state attorney disciplinary proceedings as exactly the type of "civil enforcement proceeding" that involve "vital state interests" because disciplinary proceedings "bear a close relationship to proceedings criminal in nature." *Middlesex*, 457 U.S. at 432-33 ("The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice."); *see Goldfarb v. Va. State Bar*, 421 U.S. 773, 792-93 (1975) (holding that the interest of states in regulating the conduct of lawyers is especially great because of the critical role of lawyers in the primary government function of administering justice and as officers of the courts). This Court has held, at every opportunity, that the District of

---

[11] As described above, the Judicial Watch Complaint (Bar Docket No. 2008-D048) is fully briefed and awaiting calendaring before the D.C. Court of Appeals. The Sataki Complaint (Bar Docket No. 2011-D028) is awaiting the Hearing Committee's report, which will be subject to review by the Board and D.C. Court of Appeals as necessary. A Contact Member recently approved the charges in the *Pro Hac Vice* Matter (Disciplinary Docket No. 2017-D051).

[12] If the Court construes the Report and Recommendation of the Board in the Judicial Watch Complaint as a state court decision that was final at the time the Amended Complaint was filed, the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine to entertain any of Plaintiff's claims that are "inextricably intertwined" with that decision to avoid sitting in review of a state-court decision. *Richardson v. Dist. of Columbia*, 711 F. Supp. 2d 115, 120-23 (D.D.C. 2010) (interpreting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

Columbia shares that same vital interest in regulating the practice of law. *See Yelverton*, 997 F. Supp. 2d at 5-6; *see Ford*, 163 F. Supp. 2d at 65.

Third, the D.C. Court of Appeals offers an effective forum for adjudicating the instant federal claims.[13] Out of "[m]inimal respect for the state processes," courts may not "*presume[e]* that the state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431. In fact, a state court is *presumed* to offer an adequate forum unless a plaintiff can establish "that state procedural law barred presentation of [his] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (internal quotations and citation omitted). This Court has made clear that "there is no barrier to the D.C. Court of Appeals hearing . . . constitutional claims." *Ford*, 163 F. Supp. 2d at 66 (identifying some of the many constitutional claims that the D.C. Court of Appeals has addressed in the course of attorney disciplinary proceedings). There is no basis to conclude that the D.C. Court of Appeals does not offer an "adequate opportunity" to adjudicate federal claims— something that court routinely does—much less that those claims would be *barred* in that court. All of the *Younger* factors support dismissal.

**B.      Plaintiff has not alleged "extraordinary circumstances" that might warrant federal intervention.**

Generally, a federal court should not intervene in state proceedings unless the proceedings were "brought in bad faith," for the purposes of harassment, or "under [other] extraordinary circumstances, where the danger of irreparable loss is both great and immediate." *Younger*, 401 U.S. at 45, 49. Plaintiff has not alleged such extraordinary circumstances.

Bad faith generally requires "that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975).

---

[13] In addition, Plaintiff may seek review in the Supreme Court if he believes the D.C. Court of Appeals has not adequately addressed any constitutional claims. *See* 28 U.S.C. § 1257(a), (b).

This Court has cited as an example of the required "extraordinary circumstances" the allegations of an African-American attorney who "painted a picture of pervasive racism and discriminatory treatment of blacks in the Lee County[, Arkansas] court system." *Lawrence v. Carlin*, 541 F. Supp. 2d 189, 194 n.8 (D.D.C. 2008) (citing *Lewellen v. Raff*, 843 F.2d 1103, 1110 (8th Cir. 1988)) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendants exhibited an "extremely hostile and disrespectful demeanor and words." Am Compl. ¶ 52.[14]  Plaintiff further alleges that Defendants initiated disciplinary proceedings "without providing Mr. Klayman proper notice, or granting a meeting as requested" and after a "highly prejudicial delay." *Id.* at ¶ 37. Plaintiff claims he was selectively prosecuted "because of his political activism, free speech, and gender," *id.* at ¶ 39, without alleging that any similarly situated individuals were spared prosecution. Instead, Plaintiff attempts to support his claims by alleging that "a quick search of FEC records shows that" two Defendants "donated significant sums of monies to Hillary Clinton and Barack Obama as well as other liberal Democrats." *Id.* at ¶ 42.

Plaintiff does not allege that these purported political contributions are in any way improper. *See In re Mason*, 916 F.2d 384, 387 (7th Cir. 1990) (holding that prior campaign contributions do not create an appearance of impropriety). Nor has Plaintiff alleged—and he

---

[14] *See also id.* at ¶ 53 (alleging that a Defendant told Plaintiff a topic was "none of his [male] business") (alteration in Amended Complaint); *id.* at 54 (alleging that a Defendant stated "curtly and in a hostile manner . . . 'I [we] don't like the way you practice law'"); *id.* at ¶ 56 (alleging that Defendants responded to information by stating, "we couldn't care less"); *id.* at ¶ 72 (alleging that a Defendant "threateningly, lurch[ed] towards Mr. Klayman, and scream[ed] 'this meeting is over' . . . [and] demanded that Mr. Klayman 'leave [his] office'") (second alteration in original); *id.* at 74 (alleging that a Defendant "approached Mr. Klayman at the door, as if to stalk him and screamed, 'I welcome your complaint,' adding in a hostile voice showing great animus, 'do you seriously believe that I would not welcome the opportunity through discovery to show how you practice law?'").

cannot allege—that the Office of Disciplinary Counsel instituted any of the disciplinary proceedings without a reasonable expectation of obtaining a valid disposition.  In the Judicial Watch Complaint, the Board recommended that Plaintiff be suspended from the practice of law for 90 days.  In all three disciplinary proceedings relevant to this case, an independent Contact Member of the Hearing Committee approved the charges against Plaintiff that were proposed by the Office of Disciplinary Counsel.  In the two proceedings that have progressed to the hearing stage, the Hearing Committee made preliminary, non-binding findings at the close of the hearings that Plaintiff had violated at least one of the D.C. Bar Rules.

This is a far cry from the "very strong factual showing of extraordinary circumstances" that might warrant federal intervention.  *Lawrence*, 541 F. Supp. 2d at 194 n.8 (citing with approval decision to abstain where an Illinois judge alleged selective prosecution and retaliation after he was disciplined for giving a political speech because he failed to allege that the disciplinary agency knowingly and intentionally failed to discipline other judges who engaged in similar activity).  *See also Younger*, 401 U.S. at 51, 54 (abstention appropriate despite allegation that a state proceeding "chill[s]" free expression); *see Yelverton*, 997 F. Supp. 2d at 6 (concluding upon review of allegations that disciplinary counsel harassed the plaintiff and pressured a client to file a complaint with the D.C. Bar that the plaintiff did "not cite any authority that the conduct he alleges . . . rises to the level of bad faith, harassment, or extraordinary circumstances that would justify declining to exercise equitable restraint"); *see Feingold v. Office of Disciplinary Counsel*, 487 F. App'x 743, 746 (3d Cir. 2012) ("Though Feingold claims that the state proceedings were solely to harass him, thus barring the application of *Younger* abstention, he fails to provide a basis for this allegation.").

Plaintiff's unsupported, conclusory allegations of gender discrimination and selective prosecution do not amount to the "extraordinary circumstances" that might compel intervention

where, as here, *Younger* abstention is otherwise required.  Because each requirement for *Younger*

abstention is met, the Court should dismiss the action.

**II.     Individual Defendants are protected by absolute immunity and the Office of Disciplinary Counsel is not an entity that can be sued.**

> **A.     Individual Defendants enjoy absolute judicial immunity in connection with the alleged conduct.**

Even if the Court were inclined to exercise jurisdiction in this matter, all of the claims

against the Individual Defendants are barred by various immunity protections, including absolute

judicial immunity.   As described above, the D.C. Bar Rules expressly provide immunity to

Disciplinary Counsel for civil suits arising out of disciplinary proceedings:

> Members of the Board, its employees, members of Hearing Committees, Disciplinary Counsel, and all assistants and employees of Disciplinary Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring *shall be immune from disciplinary complaint under this rule and from civil suit* for any conduct in the course of their official duties.

D.C. Bar R. XI, § 19(a) (emphasis added).

Moreover, absolute judicial immunity protects from liability judges and other public

officials, who perform quasi-judicial functions as long as their conduct (1) was not taken in the

"clear absence of all jurisdiction" and (2) involves "a judicial act."  *Nwachukwu v. Rooney*, 362 F.

Supp. 2d 183, 192 (D.D.C. 2005) (citing *Cunningham v. Dist. of Columbia*, 584 A.2d 573, 576

(D.C. 1990)).  These protections extend not only to judges but to "other officers of government

whose duties are related to the judicial process."  *Id.*  While Section 1983 contemplates exposing

state officials to damages liability in some circumstances, for at least 60 years the Supreme Court

has recognized that Section 1983 "did not abrogate the long-established absolute immunity"

afforded "actions taken by judges within the legitimate scope of judicial authority" and "actions

taken by prosecutors in their role as advocates."  *Rehberg v. Paulk*, 566 U.S. 356, 361, 363 (2012)

(noting that absolute immunity from Section 1983 claims and civil liability allows the officials it protects the freedom to perform their duties "with independence and without fear of consequences").

Similar lawsuits against state disciplinary counsel are regularly dismissed on *Younger* grounds without reaching the issue of immunity, but this Court has uniformly held that Office of Disciplinary Counsel lawyers are protected by absolute judicial immunity. *See Richardson v. Dist. of Columbia*, 711 F. Supp. 2d 115, 128 (D.D.C. 2010) (dismissing complaint against Disciplinary Counsel named in their individual capacities, noting that "[t]his Court has recognized the absolute immunity" provided by D.C. Bar Rule XI, § 19(a)); *see Nwachukwu*, 362 F. Supp. 2d at 192 (concluding that the "various attorneys who work at the Bar Counsel" in the District of Columbia are protected by absolute judicial immunity); *Thomas v. Knight*, 257 F. Supp. 2d 86, 94 (D.D.C. 2003) (same).

Plaintiff attempts to sidestep this threshold issue of absolute immunity by purporting to sue the Individual Defendants in their individual capacities—a tactic courts regularly confront and reject. *See Briggs v. Goodwin*, 569 F.2d 10, 15 (D.C. Cir. 1977) (allegations against immune defendants purportedly in their individual capacities do not deprive the defendants of absolute immunity because the alternative "would completely abrogate the doctrine of immunity"); *see Burns v. Reed*, 500 U.S. 478, 494 (1991) ("Absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation.").

Despite naming the Individual Defendants in their personal capacities, the Amended Complaint is premised entirely on the Individual Defendants' official functions that are protected by absolute immunity, namely "investigat[ing] all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of this Court" and "prosecut[ing] all disciplinary

proceedings before the Hearing Committees, the Board, and the [D.C. Court of Appeals]."  D.C. Bar R. XI, § 6(a)(1) & (4).   This Court has construed nearly identical allegations against disciplinary counsel "as if they were brought against the defendants only in their official capacities."   *Thomas*, 257 F. Supp. 2d at 88 n.2 (concluding that members of the Office of Disciplinary Counsel were entitled to absolute immunity even when sued in their individual capacities where "nothing in the complaint would support an allegation that any of the individuals acted outside of their official capacities or outside of their official authority"); *see Nwachukwu*, 362 F. Supp. 2d at 192 (concluding that Disciplinary Counsel were protected by absolute immunity where "the plaintiff name[d] Mr. Rooney, Ms. Peters, and Ms. Fort in both their individual and official capacities, [but] nothing in the complaint support[ed] an allegation that the individuals who acted on behalf of the Board and Bar Counsel did so other than in their official capacity and in the course of official duties").

Accordingly, all of Plaintiff's individual capacity claims would be barred by absolute immunity even if the Court retained jurisdiction over the claims.

**B.     The Office of Disciplinary Counsel is not a proper party for suit.**

Plaintiff purports to bring two of the four causes of action, including abuse of process and malicious prosecution, against "All Defendants," a group that presumably includes the Office of Disciplinary Counsel.   As a threshold matter, the Amended Complaint does not allege that the Office of Disciplinary Counsel engaged in *any* conduct, much less allege facts sufficient to give rise to a reasonable inference that Plaintiff is entitled to relief from the Office of Disciplinary Counsel.  *See Iqbal*, 556 U.S. at 678.   Moreover, there is no authority for subjecting the Office of Disciplinary Counsel to suit.

The Office of Disciplinary Counsel is an instrumentality of the D.C. Court of Appeals, reporting to the D.C. Court of Appeals Board on Professional Responsibility.  *See Nwachukwu*, 362 F. Supp. 2d at 192 (summarizing the statutory scheme creating the Office of Disciplinary Counsel as a component of the D.C. Court of Appeals Board on Professional Responsibility).  Such instrumentalities of the D.C. Court of Appeals are not "suable" entities.  *See Newman v. Dist. of Columbia Courts*, 125 F. Supp. 3d 95, 102 (D.D.C. 2015) (citing *Kundrat v. Dist. of Columbia*, 106 F. Supp. 2d 1, 7 (D.D.C. 2000)) (dismissing the D.C. Courts from a lawsuit because "[t]he overwhelming weight of precedent in this Circuit . . . holds that in the absence of *explicit* statutory authorization, bodies within the District of Columbia government are not suable as separate entities."); *see also Henok v. Dist. of Columbia*, 58 F. Supp. 3d 93, 94 n.1 (D.D.C. 2014) (dismissing "defendant District of Columbia Courts, which, as a subdivision of the District of Columbia government, is *non sui juris*, that is, the District's court system is not suable in its own name.") (citations omitted); *see Marin v. Comm. on Admissions*, No. 98-cv-0059, 1998 WL 1181013, at *2 n.1 (D.D.C. Nov. 9, 1998) (noting that the D.C. Court of Appeals "Committee on Admissions is *non sui juris*").  The Court should dismiss all claims against the Office of Disciplinary Counsel in the absence of any statutory authorization that it is subject to suit.

### III.    Plaintiff fails to state a claim upon which relief can be granted.

Even assuming that this case does not warrant dismissal based on *Younger* abstention and absolute immunity, Plaintiff fails to state a cognizable cause of action against any Defendant.  To the extent they can be discerned, all four causes of action are essentially allegations of selective prosecution.  *See* Am. Compl. ¶ 97 (premising the common law tort claim of "abuse of process" on the Defendants' alleged effort "to compel Mr. Klayman to be prevented and ultimately barred from practicing law due to Mr. Klayman's political beliefs, activism, free speech, and gender"); *id.* at ¶ 104 (basing the common law tort claim of "malicious prosecution" on allegation that

"Defendants acted maliciously in prosecuting Mr. Klayman, without probable cause, due solely to Mr. Klayman's political beliefs, activism, free speech, and gender"); *id.* at ¶ 110 (alleging that the Individual Defendants violated Plaintiff's equal protection rights under the Fourteenth Amendment "by selectively prosecuting him for his gender, public interest advocacy, and free speech without a legitimate or any basis in fact or law"); *id.* at ¶ 116 (alleging that the Individual Defendants "deprived Mr. Klayman of his federal, constitutional right to freedom of speech by selectively prosecuting him . . . due to his politics, conservative activism, free speech, and gender").   All of the claims share a fundamental defect that warrants dismissal, primarily the complete absence of any allegation that there are *similarly situated* individuals who were treated differently than Plaintiff.

"[T]he guarantee of 'equal protection of the laws' requires that similarly situated persons be treated similarly." *Cook v. Babbitt*, 819 F. Supp. 1, 11 (D.D.C. 1993) (citing *City of Clerburne v. Clerburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).   An equal protection violation premised on selective prosecution requires that (1) a plaintiff "was singled out for prosecution from among others similarly situated and (2) that [the] prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Wash.*, 705 F.2d 489, 494 (D.C. Cir. 1983)) (alteration in original).   "This burden is a demanding one because 'in the absence of clear evidence to the contrary, courts presume that [government prosecutors] have properly discharged their official duties.'" *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)) (alteration in original).

Here, Plaintiff does not identify anyone "to whom [he] could be compared in order to resolve the question of [prosecutorial] selection." *Branch*, 211 F.3d at 144 (citations omitted) (alteration in original) (concluding that defendant failed to make out the critical element of a

selective prosecution claim). *See also Nwachukwu*, 362 F. Supp. 2d at 193-94 (dismissing Section 1983 claims premised upon alleged violations of the First and Fourteenth Amendment in connection with the conduct of the Office of Disciplinary Counsel and its attorneys where "[t]he plaintiff's complaint does not set forth the fundamental requirement of a valid equal protection claim: that the plaintiff was treated differently than others similarly situated based on" an impermissible factor).

To the extent Plaintiff's First Amendment claim is not another selective prosecution claim masquerading as a free speech claim,[15] he has not alleged a violation of any substantive federal right as is required to state a claim under Section 1983. As a threshold matter, the practice of law is not an activity that has traditionally triggered First Amendment protection. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1978) (an attorney's "procurement of remunerative employment is a subject only marginally affected by First Amendment concerns. It falls within the State's proper sphere of economic and professional regulation."). Moreover, Plaintiff provides no factual support for his apparent contention that the Office of Disciplinary Counsel and its attorneys violated his right to free speech or any other First Amendment right. This Court has dismissed similarly unsubstantiated First Amendment claims against the Office of Disciplinary Counsel:

> The plaintiff does not explain in his complaint how the defendants' conduct violated his First Amendment rights. While the plaintiff is not obligated to plead all elements of his First Amendment claim, his complaint does not so much as hint at any reason why the defendants' conduct infringed the plaintiff's free speech rights. FED. R. CIV. P. 8(a). Allowing the plaintiff to proceed solely on unsubstantiated legal conclusions would render federal pleading standards toothless and would unnecessarily burden the defendants.

---

[15] *See* Am. Compl. ¶ 116 ("[T]he Individual Defendants have deprived Mr. Klayman of his federal, constitutional right to freedom of speech *by selectively prosecuting him* without any basis in fact or law to remove him from the practice of law due to his politics, conservative activism, free speech, and gender.") (emphasis added).

*Nwachukwu*, 362 F. Supp. 2d at 194.

Should any common law tort claims remain against any Defendant, the Court should decline to exercise supplemental jurisdiction over those claims once the federal claims over which the Court allegedly had original jurisdiction are dismissed. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").[16] In any event, Plaintiff has not properly alleged abuse of process or malicious prosecution claims under state law.

The fundamental feature of the tort of abuse of process "is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. Dist. of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. Cir. 1992)). Even accepting Plaintiff's allegations that Defendants acted maliciously or with an impermissible ulterior motive, his abuse of process claim fails. "[T]here is no action for abuse of process" where as here "the process is used for the purpose for which it is intended," even where there are allegations of "an incidental motive of spite or an ulterior purpose." *Scott*, 101 F.3d at 755 (citing Restatement (Second) of Torts § 682 cmt. b (1977)) (alteration in original).

---

[16] Plaintiff's boilerplate request for preliminary and permanent injunctive relief in the Prayer for Relief of the Amended Complaint is not properly before the Court under Local Rule 65.1(c). Regardless, the relief should be denied as moot. *See Yelverton*, 997 F. Supp. 2d at 4 n.5 ("Because [Defendant's] motion to dismiss will be granted, [Plaintiff's] motion for a preliminary injunction will be denied as moot. However, if [Plaintiff's] motion for a preliminary injunction had been addressed on the merits, it would have been denied, because [Plaintiff] has neither shown that he has a substantial likelihood of succeeding on the merits, nor shown that a temporary suspension of his license to practice law would constitute an irreparable injury.").

As described above, Plaintiff's malicious prosecution claim appears to allege *selective prosecution* and should be dismissed for its failure to allege that similarly situated individuals were treated differently, as is required to properly state such a claim under state law. *See United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982). To the extent Plaintiff alleges malicious prosecution, he has failed to allege (and cannot allege) as is required that any underlying state proceeding was terminated in his favor. *See Pitt v. Dist. of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007) (stating that the first element of a malicious prosecution claim is "termination of the underlying suit in plaintiff's favor").

None of the three disciplinary proceedings has been resolved in Plaintiff's favor. With respect to the Judicial Watch Complaint, the only matter to reach the Board, the Board recommended that Plaintiff be suspended for 90 days for "flagrantly" violating D.C. Bar Rule 1.9 "on three separate occasions." Ex. 1 at 18. In the Sataki Complaint, a Contact Member of the Hearing Committee approved the charges filed against Plaintiff and the Hearing Committee issued a preliminary finding at the conclusion of the hearing that Plaintiff violated at least one of the D.C. Bar Rules. With respect to the *Pro Hac Vice* Matter, a Contact Member of the Hearing Committee similarly approved the charges, which were recently filed. Like all of his other claims, Plaintiff's malicious prosecution claim fails on its face. Plaintiff has not alleged a cognizable claim under Section 1983 or state law, and his Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: September 19, 2018                    Respectfully submitted,

                                             /s/ Mark J. MacDougall
                                             Mark J. MacDougall (D.C. Bar No. 398118)
                                             Connor Mullin (DC Bar No. 981715)
                                             AKIN GUMP STRAUSS HAUER &  FELD LLP
                                             1333 New Hampshire Avenue, NW
                                             Washington, DC 20036
                                             Tel: (202) 887-4000 | Fax: (202) 887-4288
                                             mmacdougall@akingump.com
                                             cmullin@akingump.com

                                             *Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, )
                           Plaintiff, )
                                       )
                             )    Civil Action No. 1:18-01579 (RDM)
          v. )
                                         )
                                         )
HAMILTON FOX *et al.*, )
                      Defendants. )
                                         )
                                         )

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss, it is hereby:

ORDERED that the Defendants' Motion is GRANTED; and it is further

ORDERED that all claims against Defendants Office of Disciplinary Counsel, Hamilton

P. Fox, III, Elizabeth A. Herman, H. Clay Smith, III, and Julia L. Porter are DISMISSED with

prejudice.

          SO ORDERED.


DATED: _____

                                     **_____**
                                     **THE HONORABLE RANDOLPH D. MOSS**
                                     United States District Judge

# EXHIBIT 1

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY



February 6, 2018

Board on Professional
Responsibility

| | |
|---|---|
| In the Matter of: | : |
| | : |
| LARRY E. KLAYMAN, | : |
| | : Board Docket No. 13-BD-084 |
| Respondent. | : Bar Docket No. 2008-D048 |
| | : |
| A Member of the Bar of the | : |
| District of Columbia Court of Appeals | : |
| (Bar Registration No. 334581) | : |

REPORT AND RECOMMENDATION OF THE
BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent Larry E. Klayman represented individual clients in three separate lawsuits against Judicial Watch, Inc., a nonprofit organization that previously employed him as General Counsel.

Disciplinary Counsel (formerly Bar Counsel) asserts that Respondent had a "prior client" conflict of interest in all three cases, and charges him with violating Rule 1.9 of the District of Columbia Rules of Professional Conduct ("Rules") and its analogue, Florida Rule of Professional Conduct 4-1.9(a) ("Florida Rule"). Respondent is also charged with seriously interfering with the administration of justice, and thus violating Rule 8.4(d), in one of those matters.

Hearing Committee Number Nine sustained all of the charges and recommended that Respondent be suspended for ninety days, with readmission contingent upon a showing of his fitness to practice law. Respondent timely filed exceptions to the Hearing Committee's Report.

The Hearing Committee's factual findings are supported by substantial evidence (with the exception of its finding that Respondent gave false testimony during the hearing, discussed *infra*, p. 16).  HC Rpt. 5-15.[1]  We adopt them as our own, supplementing them with our own findings denoted by direct citations to the record.[2]

We also agree with the Hearing Committee's well-reasoned analysis of the conflict of interest charges. HC Rpt. 16-29.  We therefore adopt that portion of the report as our own, and abridge our own discussion of the conflict issues.

On the other hand, we conclude that Disciplinary Counsel failed to prove the Rule 8.4(d) allegation, and disagree with the Hearing Committee's finding that Respondent violated it.  HC Rpt. 34-35.

Finally, based on our own review of the evidence, we recommend that Respondent be suspended for ninety days with no fitness requirement.

---

[1]     The Hearing Committee's Report and Recommendation are designated "HC Rpt. ___" and its Findings of Fact are designated "FF __."  Disciplinary Counsel's and Respondent's exhibits are designated "DCX" and "RX" respectively.  The disciplinary hearing transcript is designated "Tr. __."  Respondent's Brief to the Board is designated "Resp. Br. __."

[2]     Respondent has filed various materials with the Board as an appendix to his Brief.  We decline to supplement the Record to consider them.  Respondent has not demonstrated the exceptional circumstances which would justify our accepting evidence (some of which was created after the Hearing Committee report) that Disciplinary Counsel had no opportunity to challenge at the hearing.  *See* Board Rule 13.7 ("Review by the Board shall be limited to the evidence presented to the Hearing Committee, except in extraordinary circumstances determined by the Board.").

## I.   FACTUAL BACKGROUND

Respondent was formerly employed by Judicial Watch as its in-house General Counsel. The disciplinary charges in this case relate to three matters in which Respondent represented Judicial Watch in that capacity.

A.   <u>Sandra Cobas's Dispute with Judicial Watch  (HC Rpt. 7-9)</u>

Sandra Cobas was director of Judicial Watch's Miami Regional Office. In 2003, she complained to Respondent (its General Counsel) that she was subject to a hostile work environment.  Tr. 44, 49, 226, 251, 264-65.  Judicial Watch relied on Respondent for legal advice in employment matters, and he advised Judicial Watch's management to take action against another employee who was the subject of her complaints.

Respondent and Cobas both subsequently left Judicial Watch's employ, and Cobas filed a complaint against Judicial Watch in Florida state court, reiterating the same complaint she had earlier made to Respondent.

The Florida trial court dismissed the case on Judicial Watch's motion. Thereafter, without seeking the consent of Judicial Watch, Respondent appeared in the case as attorney for Cobas and moved the trial court to vacate the dismissal order.  Unsuccessful, Respondent later filed a notice of appeal and an appellate brief on Cobas's behalf.  The Florida District Court of Appeal summarily affirmed the dismissal.

B.    <u>Louise Benson's Dispute with Judicial Watch  (HC Rpt. 9-13)</u>

In 2002, Judicial Watch undertook a major capital fund-raising campaign, the goal of which was to purchase a headquarters building.  Judicial Watch relied on Respondent, as its General Counsel, to protect its legal interests in all aspects of that effort.

As part of the capital campaign, Respondent sent a letter to Louise Benson seeking a substantial donation from her. He signed the letter as Judicial Watch's "Chairman & General Counsel." In response to the letter, Benson pledged $50,000 to the building fund, of which she paid $15,000.

Judicial Watch did not purchase the building, and Benson filed a civil action against it in D.C. Superior Court.  Relying on the promises in Respondent's solicitation letter, Benson sought damages for fraudulent misrepresentation, breach of contract, and unjust enrichment.

Judicial Watch returned $15,000 to Benson.  Yet even though no substantial dispute remained between the parties, the litigation persisted.  Without seeking Judicial Watch's consent, Respondent appeared in the case as co-counsel for Benson.  Judicial Watch, citing Rule 1.9, demanded that Respondent withdraw, noting that the capital fundraising campaign had been "organized and coordinated by [Respondent] during his tenure as General Counsel." DCX 28 at 167. Respondent refused to withdraw, and Judicial Watch moved to disqualify him. That motion was never decided because the parties agreed to dismiss the case.

C.   Peter Paul's Dispute with Judicial Watch  (HC Rpt. 13-15)

In 2001, Judicial Watch entered into contracts with Peter Paul, agreeing to assess the propriety of fundraising activities engaged in by Paul during an election campaign, and to provide legal counsel to Paul in related securities investigations and litigation.  Respondent drafted, edited, and approved the contracts on behalf of Judicial Watch, signing as its "Chairman and General Counsel."

Pursuant to the agreement, Judicial Watch provided Paul with legal counsel in a civil lawsuit brought in California state court, but withdrew from the matter after Respondent left the organization.  Paul then sued Judicial Watch in the U.S. District Court for the District of Columbia, claiming that it had breached the contract that Respondent had negotiated.  Without seeking Judicial Watch's consent, Respondent appeared as an attorney for Paul, and Judicial Watch moved to disqualify him.

The District Court granted the motion, finding that Respondent's representation of Paul violated Rule 1.9.  Judge Lamberth concluded that, as Judicial Watch's General Counsel, Respondent had "directed and supervised negotiation and drafting" of the contract with Paul, and that the subject matter of the litigation was "*at least* substantially related to, if not the very same" as his prior work.  DCX 52 at 5 (emphasis in original).  Respondent's representation of Paul was thus "the very type of 'changing of sides in the matter' forbidden by Rule 1.9." *Id*.  Noting some ambiguity in the case law as to the standard for disqualification, the court nevertheless granted the motion and disqualified Respondent.  *Id*. at 5-15.

## II.    DISCUSSION

A.    Respondent Had a Conflict of Interest in Three Matters.

Absent consent, a lawyer may not represent a client who is "materially adverse" to a former client in a matter that is the "same or a substantially related" to a matter in which the lawyer represented the former client.  Rule 1.9.[3]  The purpose of Rule 1.9 is to "assure the preservation of attorney-client confidences gained in the prior representation and to preserve the reasonable expectations of the former client that the attorney will not seek to benefit from the prior representation at the expense of the former client."  D.C. Bar Legal Ethics Opinion 272 (1997).  The solicitude for the duty of confidentiality is so strong that where "two matters, handled by the same counsel, are substantially related, there is an *irrebuttable presumption* that counsel received information during the first representation that is relevant to the second."  *Derrickson v. Derrickson*, 541 A.2d 149, 151-52 (D.C. 1988) (quoting *Brown v. District of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37, 42 n.5 (D.C. 1984)) (emphasis in original).

Respondent does not contend that his clients' interests were not materially adverse to Judicial Watch in the three lawsuits.  Nor is there any claim that Judicial Watch consented to his appearances.  Thus, to prove a Rule 1.9 violation, Disciplinary Counsel had only to prove that an attorney-client relationship formerly existed between Respondent and Judicial Watch, and that the later litigations were substantially related to a prior representation.  *See id.* at 152.

---

[3]    Florida Rule of Professional Conduct 4-1.9(a) is to the same effect.  HC Rpt. 19-20.

Respondent argued to the Hearing Committee and reiterates to the Board that, while at Judicial Watch, his interactions with Cobas, Benson, and Paul were in his capacity as Judicial Watch's Chairman, not as its lawyer.  He also claims that the matters he dealt with at Judicial Watch were not the same, or even substantially related to, the subject matter of the lawsuits in which he later appeared.  The Hearing Committee rejected those arguments, and properly so.

1.     <u>Respondent acted as a lawyer for Judicial Watch in all three matters.</u>

Respondent argues that he was not acting as Judicial Watch's counsel in any relevant respect, and criticizes the Hearing Committee for purportedly basing its contrary finding on an "overly broad presumption" that a lawyer whose job title is Chairman and General Counsel "must therefore be acting . . . as a lawyer . . . in everything he does."  Resp. Br. 6.

The Hearing Committee acknowledged a "presumption that a company's general counsel is most often acting in his legal capacity."  HC Rpt. 24 (citing *Boca Investerings Partnership v. United States*, 31 F. Supp. 2d 9, 12 (D.D.C. 1998) ("There is a presumption that a lawyer in the legal department . . . is most often giving legal advice, while the opposite presumption applies to a lawyer . . . who works for the . . . management or business side of the house.")).  Although we have no quarrel with that reasonable proposition, we need not rely on any presumption in this case, because the direct evidence cited by the Hearing Committee

7

convincingly establishes that Respondent acted as Judicial Watch's lawyer in all three matters.[4]

Our assessment of whether Respondent was acting as lawyer for Judicial Watch is to be determined by a "totality of the circumstances." *In re Fay*, 111 A.3d 1025, 1030 (D.C. 2015) (per curiam).  "All that is required [to create an attorney-client relationship] is that the parties explicitly or by their conduct, manifest an intention" to create it.  *In re Dickens*, 174 A.3d 283, 296 (D.C. 2017) (alteration in original) (quoting *In re Ryan*, 670 A.2d 375, 379 (D.C. 1996)) (internal quotation marks and citation omitted).  The perception of Judicial Watch is an "important consideration in determining whether [an] attorney-client relationship existed."  *In re Bernstein*, 707 A.2d 371, 375 (D.C. 1998) (citing *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982)).

Here, Respondent was employed by Judicial Watch as its General Counsel (1) when Cobas complained to him about the conditions of her employment and he recommended that Judicial Watch take action against another employee, (2) when he advised Judicial Watch regarding its fundraising effort, and (3) when he negotiated Judicial Watch's representation agreements with Paul.  HC Rpt. 6, 7, 9, 13, 14.  If he were *not* continuing to act as its legal counsel in those matters, Respondent should have told Judicial Watch executives as much, so they would "not mistakenly suppose [he was] looking after [its] affairs when [he] ha[d] ceased

---

[4]     Because the facts clearly and convincingly establish that Respondent was acting as Judicial Watch's legal counsel at all relevant times, Respondent's argument that a corporation's lawyer may sometimes not act as legal counsel is irrelevant.

8

to do so." *Dickens*, 174 A.3d at 297 (quoting Rule 1.3, cmt. [9]). Because Respondent never informed them that he was not acting as Judicial Watch's lawyer in connection with any of the three matters, Judicial Watch's executives reasonably believed that Respondent was acting as its lawyer. This evidence alone establishes that the attorney-client relationship persisted as to all the matters at issue. Yet there is more.

As to Cobas, Respondent *admitted* in his post-hearing filings that he provided legal advice to Judicial Watch about Cobas's employment claim. FF 6.[5] The Hearing Committee also noted that contemporaneous memoranda suggested Respondent's involvement as Judicial Watch's lawyer. *Id.* More compelling, however, was the testimony by both Judicial Watch's president and another of its in-house counsel that Respondent explicitly told them he was relaying Cobas's claim in his capacity as General Counsel. Tr. 54-55 (Respondent "was a lawyer [Judicial Watch] relied on for advice on personnel matters" who provided "legal advice" in the Cobas matter), 264-65 (Respondent "gathered information from Ms. Cobas in [his] capacity as General Counsel to the organization" and conveyed that information to Judicial Watch officers).

---

[5]     In his post-hearing brief, Respondent admitted a Proposed Finding of Disciplinary Counsel that stated: "In his capacity as General Counsel, Respondent provided legal advice to Judicial Watch about Ms. Cobas's hostile work environment claim and he advised Judicial Watch to take action against the employee Ms. Cobas had complained about." Respondent asks us to disregard his admission as "mistaken and over inclusive" because it was purportedly more comprehensive than other evidence in the record. Resp. Br. 22. We will not do so. Respondent's admission was not inadvertent: it appeared in a highly specific and detailed analysis of Disciplinary Counsel's filings by a *pro se* respondent. In addition, the admission was entirely consistent with Respondent's testimony to the same effect ("I was representing Judicial Watch in addition to [other] clients . . . ." Tr. 444-45.).

9

Similarly, the Hearing Committee found that Respondent acted as legal counsel to Judicial Watch in connection with its capital campaign, of which his solicitation letter to Louise Benson was but a part.  FF 10 & n.3.  Respondent identified himself in the letter as the organization's General Counsel, and the Hearing Committee credited the testimony of Judicial Watch's president attesting that Respondent had used his legal skills to ensure that all Judicial Watch fundraising materials were accurate, complied with IRS and other governmental requirements, and did not undercut positions Judicial Watch had taken in unrelated litigation matters.  FF 10; Tr. 66-67.  Respondent "ma[d]e sure there were no legal issues" with Judicial Watch's fundraising materials, and thus necessarily acted as its lawyer in connection with the fundraising campaign, including the solicitation letter that was part of that campaign.  Tr. 66.

Finally, Respondent raises no serious challenge to the Hearing Committee's conclusion that he acted as Judicial Watch's lawyer with respect to the Paul representation, FF 23, and we agree with Judge Lamberth's identical conclusion.

2.  <u>The three lawsuits were substantially related to Respondent's prior representation of Judicial Watch.</u>

Respondent violated Rule 1.9 if there was a substantial relationship between his prior representation of Judicial Watch and his subsequent representations of

clients who were materially adverse to it.  *Brown*, 486 A.2d at 42.  The law in Florida is to the same effect. [6]

The Hearing Committee concluded that, as to all three matters in question, the relationship was not only substantial, but direct and obvious.  HC Rpt. 20. We agree.

In the Cobas matter, Respondent appeared in a lawsuit asserting the very same complaint *against* Judicial Watch he had earlier fielded *on behalf of* Judicial Watch. *Id*. at 21.  Florida's Rule 4-1.9(a) prohibited Respondent from taking on that later representation.  *Id*.

Similarly, Respondent represented Benson and asserted fraud in the fundraising campaign and letter with which Respondent had been "directly involved" as Judicial Watch's attorney.  *See* Rule 1.9, cmt. [2] ("When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.").  In advising Judicial Watch regarding its fundraising campaign and in preparing and transmitting his letter to Benson, Respondent had been in a position to receive client information from Judicial Watch that bore on Benson's later claim that Respondent's solicitation had defrauded her.  His later representation of her was thus prohibited. HC Rpt. 21-22.

---

[6]     The conduct in the Cobas matter is governed by Florida Rule of Professional Conduct 4-1.9(a) because the misconduct took place in connection with a matter pending before a Florida tribunal.  Rule 8.5(b)(1).  We deny Respondent's motion to dismiss that charge for the reasons stated by the Hearing Committee.  HC Rpt. 4-5.

11

Finally, Respondent represented Paul, claiming that Judicial Watch breached the representation agreement that Respondent, as Judicial Watch's attorney, had negotiated and signed. His conflict of interest in doing so was evident. HC Rpt. 22-23.

For these reasons, we agree with the Hearing Committee's conclusion that Respondent violated Florida Rule 4-1.9(a) in the Cobas matter, and D.C. Rule 1.9 in the Benson and Paul matters.

### B.   Respondent Did Not Violate Rule 8.4(d).

Respondent is also charged with violating Rule 8.4(d) in the Paul matter. A lawyer violates Rule 8.4(d) when his conduct (1) is improper; (2) bears directly upon the judicial process with respect to an identifiable case or tribunal; and (3) taints the judicial process in more than a *de minimis* way; that is, it potentially impacts the process to a serious and adverse degree. *In re Hopkins*, 677 A.2d 55, 60-61 (D.C. 1996). The Hearing Committee concluded that Respondent violated the Rule by appearing as counsel for Paul against Judicial Watch and forcing it to move for his disqualification; by obtaining extensions of time to oppose the motion; by lodging "meritless arguments" in opposition to the motion; and by filing a notice of appeal that he did not prosecute.[7]  HC Rpt. 34-35.

---

[7]   Respondent moved for three extensions of time in which to respond to the disqualification motion. HC Rpt. 35. Although it appears that Judicial Watch opposed one or more of those motions (*see* DCX 45), the court granted them. There is no evidence that these motions for extension were "improper" within the meaning of Rule 8.4(d), and they cannot therefore underpin a violation of that Rule.

We conclude that, although this case presents a close question, Disciplinary Counsel did not prove a Rule 8.4(d) violation.

On the one hand, Respondent's conflict in the Paul litigation was obvious, and he should have recognized it.  Respondent also knew that Judicial Watch – which had earlier moved to disqualify him in the Benson case – would not consent to his appearance in the Paul litigation.  Rather than raising the issue with the court in the first instance, Respondent forced Judicial Watch to move for his disqualification, and forced the court to rule on that motion.  We thus agree with the Hearing Committee that Respondent acted improperly with respect to a specific case, and that Disciplinary Counsel established the first two elements of a Rule 8.4(d) violation.  The question remains, however, whether Respondent's conduct unacceptably "tainted" the Paul case.

The Board has long been concerned about the scope of Rule 8.4(d) in litigation-related disciplinary matters.  In *In re White*, 11 A.3d 1226 (D.C. 2011) (per curiam), the Board concluded that even though a court (coincidentally, Judge Lamberth) had disqualified the respondent due to a prior client conflict (pursuant to Rule 1.11), a successful "disqualification motion, without more, does not support a finding that the conduct was a serious interference with the administration of justice."  *Id.* at 1247 (appended Board report).  The Board found no Rule 8.4(d) violation because it was concerned about "a pernicious effect on the administration of justice" since lawyers might "withdraw unnecessarily, rather than risk exposure to disciplinary charges."  *Id.*

13

The Court disagreed with the Board's rationale, but did not find a Rule 8.4(d) violation based on the disqualification alone.  Rather, it assessed not only the outcome of the disqualification motion, but also considered other misconduct of the respondent along with the views of the trial court in the matter.  *Id.* at 1232.

Application of the broader assessment contemplated by *White* to the facts of this case leads us to conclude that Respondent did not violate Rule 8.4(d).  This case presents the extraordinary situation in which Judge Lamberth, the trial court judge, testified to the Hearing Committee that in his view the disqualification motion presented a "fairly unusual circumstance"; that "there was a legitimate debate about the conduct" of Respondent; and that Paul was "a very needy client who needed services, who could not otherwise afford services."  Tr. 658-59.  For those reasons, and despite ordering Respondent's disqualification, Judge Lamberth did not refer the matter to Disciplinary Counsel because "the public comments that I made [in the disqualification opinion] were sufficient to make sure that counsel in the future understood the Court's view of a motion to disqualify like that."  Tr. 659.

Unlike *White*, any Rule 8.4(d) violation in this case would be premised solely upon the Rule 1.9 conflict and disqualification; in effect, it would be derivative of the conflict of interest finding.  Respondent engaged in no other consequential misconduct before the tribunal.  In that context, Judge Lamberth's supportive testimony takes on extra significance.  We are unable to conclude that

Respondent's behavior sufficiently tainted the judicial process to a degree adequate to sustain the Rule 8.4(d) charge.

### III.   SANCTION

Our sanction recommendation should protect the public and the courts, maintain the integrity of the profession, and deter other attorneys from engaging in similar misconduct.  *See In re Reback*, 513 A.2d 226, 231 (D.C. 1986) (en banc). It must also be consistent with sanctions for comparable misconduct (*see* D.C. Bar R. XI, § 9(h)(1)) and take into account (1) the nature of the violation; (2) mitigating and aggravating circumstances; (3) the need to protect the public, the courts, and the legal profession; and (4) the moral fitness of the attorney.  *In re Cleaver-Bascombe*, 986 A.2d 1191, 1195 (D.C. 2010) (per curiam) (quoting *In re Goffe*, 641 A.2d 458, 464 (D.C. 1994) (per curiam)).

As discussed below, the range of sanctions previously imposed for engaging in conflicts of interest varies from informal admonition to suspension, and suspensions have ranged from thirty to ninety days, with the more severe terms premised upon significant other violations.  Respondent urges that his misconduct warrants only an informal admonition.  We disagree.

A.   The Hearing Committee's Recommendation

The Hearing Committee concluded that Respondent's conduct was "at the serious end of the spectrum."  It concluded that Respondent:

> repeatedly represented clients against his former client as part of a prolonged and acrimonious dispute over how Judicial Watch was run after Respondent left the organization; it is hard to see Respondent's

actions as anything other than improper attempts to prolong litigation, increase costs for Judicial Watch, and further his personal crusade against the organization.

HC Rpt. 40.

The Hearing Committee also found that Respondent testified falsely in the hearing and misrepresented his testimony in his brief. HC Rpt. 41.  It concluded that Respondent's testimony and argument falsely claimed that he relied on his co-counsel's advice that he could ethically appear in the litigations.  *Id.* at 29-30.  The Hearing Committee also decided that a fitness requirement was necessary, in considerable part because of (1) Respondent's dishonesty before the Committee and (2) a disciplinary matter in Florida, which suggested that Respondent will not act ethically after his period of suspension has run.  *Id.* at 42; *see In re Cater*, 887 A.2d 1, 24 (D.C. 2005).

Since the Hearing Committee's findings of uncharged falsehoods were material to the sanction recommendation, we must review them *de novo*.  *See In re Bradley*, 70 A.3d 1189, 1194 (D.C. 2013) (per curiam).  The Committee relied virtually entirely on the testimony of Respondent's co-counsel in the Benson matter, who testified that he did not endorse Respondent's appearance.  However, the forcefulness of that testimony was undercut by the witness's repeated, yet understandable, inability to recall the substance of key conversations in which he had participated with Respondent more than eight years earlier.  *See* Resp. Br. 39-41; Tr. 677-79.  For example, when asked if he had advised Respondent if he could enter his appearance on behalf of Ms. Benson, he testified "I don't recall."  Tr.

16

676; *see* Tr. 688.  Moreover, a contemporaneous court filing quoted him as stating that there "was no ethical issue" arising from Respondent's representation of Benson.  DCX 29 at 5.  The witness, who co-signed Respondent's opposition to the disqualification motion, testified in the disciplinary hearing that he did not think the opposition was frivolous (Tr. 689) and would not have "put [his] name on a pleading that [he] thought was in violation of any pleading rule or ethical rule." Tr. 696.

The Court has noted that in disciplinary proceedings the passage of time "dims memories and so distorts the truthfinding process" such that mitigation, rather than enhancement of proposed sanctions, is "particularly suitable."  *In re Williams*, 513 A.2d 793, 798 (D.C. 1986) (per curiam).  Here, the witness's diminished recollection and his prior, apparently inconsistent, statements convince us that Disciplinary Counsel (who did *not* argue to the Hearing Committee that Respondent was dishonest) failed to prove dishonesty by clear and convincing evidence. *See In re Downey*, 162 A.3d 162, 168-69 (D.C. 2017).

The Hearing Committee also found that Respondent's misconduct was aggravated by a prior discipline in Florida.  In 2011, the Florida Supreme Court of Florida reprimanded Respondent for violating four of Florida's Rules of Professional Conduct in connection with a client dispute.  DCX 53.  The parties mediated the dispute through a Bar program.  Respondent agreed to pay the client $5,000 but failed to do so for more than two years, and then only after Florida Bar Counsel had sent numerous letters requesting that he comply.  *Id.* at 11-15.

17

Case 1:18-cv-02209-RDM   Document 15-2   Filed 09/19/18   Page 19 of 22

Respondent agreed to a public reprimand.  *Id.* at 5, 18.  Though we acknowledge that violation, we do not give it much weight because the matter indicates that Respondent's delayed payment was affected by a serious auto accident and significant financial difficulties.  *Id.* at 12-14.

B.      Respondent Should Be Suspended for Ninety Days Without a Fitness Requirement.

Respondent's misconduct was not isolated, innocent, or inadvertent.  Rather, he deliberately and repeatedly disregarded his fundamental duty of confidentiality to Judicial Watch, his former client and employer, as part of his crusade against that organization.  Although there was no proof that he actually disclosed Judicial Watch confidences, he flagrantly violated Rule 1.9 on three separate occasions, and throughout this proceeding has refused to acknowledge those improprieties.  Thus, the informal admonition cases cited by Respondent in his brief to the Board (*In re Killingham*, *In re Lunsford*, and *In re Sofaer*) do not involve misconduct comparable to this case.

A thirty-day suspension was imposed in *In re Long*, 902 A.2d 1168, 1172 (D.C. 2006) (per curiam) where the respondent unknowingly engaged in a conflicting representation with the good intention of helping a friend, among other misconduct.  Respondent's misconduct is more serious that *Long*, and also more serious than *In re Butterfield*, 851 A.2d 513, 514 (D.C. 2004) (per curiam), where the respondent was suspended for thirty days for his failure to perform a conflicts check and failure to withdraw once he learned of a conflict because he was

concerned about losing a new, potentially profitable client.  *See In re Butterfield*, Bar Docket No. 264-99 at 29 (BPR June 10, 2003).

We find that Respondent's conduct is most similar to that in *In re Shay*, 756 A.2d 465, 466, 480-83 (D.C. 2000) (per curiam) (appended Board Report), where the respondent was suspended for ninety days for persisting in a conflicting representation for six years, compounded by dishonesty and lack of remorse, and *In re Jones-Terrell*, 712 A.2d 496, 500-02 (D.C. 1998) where the respondent was suspended for sixty days for a conflicting representation at a vulnerable client's expense coupled with dishonesty.

Although Respondent did not engage in dishonesty in either the underlying events or these proceedings, his conduct was as serious as that in *Shay* and *Jones-Terrell* because it was motivated by animus toward Judicial Watch.  These were not three innocent mistakes by a busy lawyer who lost track of an old client. Indeed, Respondent never claimed that the conflict resulted from mistake, carelessness, or inadvertence.  He also shows no remorse for his obvious misconduct.  Instead, he argued to the Hearing Committee that he engaged in these three obviously conflicting representations pursuant to his ethical obligation under Rule 1.3 to zealously represent his new clients, who had been abandoned by Judicial Watch and would have been without representation were if not for him. The Hearing Committee rejected this argument, as do we.  HC Rpt. 31.

To advance his personal crusade against Judicial Watch, Respondent "switched sides," and represented three individuals after representing Judicial

19

Watch in the same matters involving those same three people.  This vindictiveness strikes at the very heart of the attorney-client relationship, and deserves a serious sanction of ninety-day suspension.  We expect that this suspension will send a message to Respondent and others who may be similarly tempted to turn on former clients to whom they owe a continuing duty of confidentiality.

The Hearing Committee's fitness recommendation relied heavily on its finding that Respondent testified dishonestly and its consideration of prior discipline in Florida.  As discussed above, we do not find clear and convincing evidence that Respondent testified falsely, and we see the Florida discipline as less serious than the Hearing Committee saw it.  Although we find Respondent's lack of remorse troubling, it does not rise to the level of clear and convincing evidence of a serious doubt as to Respondent's ability to practice law following his suspension.  *See Cater*, 887 A.2d at 24.  We thus reject the Hearing Committee's recommendation that we impose a fitness requirement.

IV.    CONCLUSION

Respondent violated Florida Rule 4-1.9(a) in Count I, and D.C. Rule 1.9 in Counts II and III of the Amended Specification of Charges.  We recommend that Respondent be suspended from the practice of law for ninety days.


BOARD ON PROFESSIONAL RESPONSIBILITY

By: _____
Robert C. Bernius
Chair


All members of the Board concur in this Report and Recommendation except Messrs. Bernstein and Kaiser, who are recused.

# EXHIBIT 2

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of                                  :
                                                  :
LARRY E. KLAYMAN, ESQUIRE                          :
                                                  :
    Respondent,                                   :
                                                  :
A Member of the Bar of the                         :
District of Columbia Court of Appeals.             :
Bar Number:  334581                                :
Date of Admission:  December 22, 1980              :
                                                  :



Disciplinary Docket No. 2017-D051

## SPECIFICATION OF CHARGES

The disciplinary proceedings instituted by this petition are based upon conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by D.C. Bar R. X and XI, § 2(b).

Jurisdiction for this disciplinary proceeding is prescribed by D.C. Bar R. XI. Pursuant to D.C. Bar R. XI, § 1(a), jurisdiction is found because:

1.     Respondent is a member of the Bar of the District of Columbia Court of Appeals, having been admitted on December 22, 1980, and assigned Bar number 334581. Respondent also is licensed in Florida. Respondent was licensed to practice in Pennsylvania but was administratively suspended based on his failure to comply with CLE requirements. Respondent has never been licensed to practice law in Nevada.

The facts giving rise to the charges of misconduct are as follows:

### The Disciplinary Proceedings Pending Against Respondent in 2016

2.     On or about November 15, 2012, Disciplinary Counsel submitted proposed charges against Respondent in Bar Docket No. 2008-D048. A contact member approved the charges, and

they were filed with the Court on September 27, 2013 and subsequently served on Respondent.

3.      On June 23, 2014, Respondent signed an affidavit stipulating to the facts in a petition for negotiated discipline. Respondent averred that he accepted full responsibility for his misconduct, which the negotiated petition described as violations of Rule 1.9 (conflicts of interest) in three matters and Rule 8.4(d) (conduct seriously interfering with administration of justice) in one of the three matters. He agreed to a public censure for his misconduct.

4.      After holding a hearing on the petition for negotiated discipline, the Hearing Committee issued an order on January 13, 2015, finding that a public censure was "unduly lenient." On that basis, the Committee rejected the petition for negotiated discipline but said the parties could revise and resubmit it.

5.      On June 22, 2015, Disciplinary Counsel filed a motion to withdraw its petition for negotiated discipline. On August 3, 2015, the Hearing Committee denied the motion as moot, as the matter for negotiated disposition already was closed.

6.      On August 31, 2015, the Board Office assigned the previously-filed charges against Respondent to another Hearing Committee. That Committee held a three-day hearing on the charges on January 26-28, 2016.

7.      At the close of the hearing on January 28, 2016, the Hearing Committee made a preliminary, non-binding decision, finding that Respondent had violated at least one of the Rules. The Committee set a briefing schedule for post-hearing briefs.

8.      On March 3, 2016, Disciplinary Counsel filed its post-hearing brief, recommending that Respondent be suspended based the evidence demonstrating he violated Rule 1.9 in three matters and Rule 8.4(d) in one of the three matters.

9.      Respondent did not file his post-hearing brief until sometime after March 16, 2016.

**The Criminal Charges Against Cliven Bundy in Federal Court in Nevada**

10.     On March 2, 2016, a federal grand jury in the District of Nevada returned a sixteen-count superseding indictment against Cliven Bundy, four of his sons, and 14 others, charging them with conspiracy, assault on a federal officer, obstruction of justice, and other crimes.

11.     Following his indictment, Bundy retained a Nevada lawyer, Joel Hansen, and Respondent to represent him in the criminal matter, which was before the United States District Court for the District of Nevada.[1]

12.     Under the Local Rules for the District Court in Nevada, an attorney who has been retained to appear in a particular case but is not a member of the bar of the district court "may appear only with the court's permission . . . by verified petition on the form furnished by the clerk." Nev. Dist. Ct. Local R. IA 11-2(a). The Rule further states that "[t]he court may grant or deny a petition to practice under this rule." *Id.* 11-2(h).

**Respondent's Petition to be Admitted *Pro Hac Vice* as Counsel for Bundy**

13.     On March 22, 2016, Respondent filed a Verified Petition stating that Bundy had retained him in connection with the Nevada criminal case and requesting *pro hac vice* admission to practice before the district court.

14.     In his verified petition and in other pleadings Respondent filed with the United States District Court in Nevada and the United States Court of Appeals for the Ninth Circuit, Respondent listed his offices at 2020 Pennsylvania Avenue, NW, Suite 800 (later Suite 345), Washington, D.C. 20006.

---

[1]     Hansen later sought permission to withdraw for health reasons, and the district court approved his request on the condition that Bundy find substitute local counsel. On October 24, 2016, Nevada attorney Bret Whipple entered his appearance as counsel for Bundy.

15.     The Verified Petition included Respondent's sworn responses to a number of inquiries. The fifth question or request for information read:

> That there are or have been no disciplinary proceedings instituted against petitioner, nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory or administrative body, or any resignation or termination in order to avoid disciplinary or disbarment proceedings, except as described in detail below.

16.     Respondent wrote in response:

> The only disciplinary case pending is in the District of Columbia, disclosed in the attached.   During my 39 years as an attorney, I have remained continually in good standing with every jurisdiction that I have been admitted to, but have responded to a few complaints explained in the attached statement.  I also allowed my bar membership in Pennsylvania to lapse for lack of use by not completing CLE's [sic] there, but remain eligible for reinstatement.  See attached statement.

17.     Respondent provided further information in an attached statement.  With respect to the disciplinary case in D.C., Respondent stated:

> [The proceeding] was filed almost 8 years ago over a claim by Judicial Watch, my former public interest group that I founded and was Chairman and General Counsel, after I left Judicial Watch to run for the U.S. Senate in Florida in 2003-04, that by representing a former client, employee and donor that it had abandoned, sexually harassed and defrauded that I was in conflict of interest.   I represented the persons pro bono, did not breach any confidences with Judicial Watch, and did so only to protect their interests in an ethical fashion.  I did not seek to break any agreements with Judicial Watch but rather to have them enforced to help these persons.  The matter is likely to be resolved in my favor and there has been no disciplinary action.

18.     As to other bar complaints, Respondent explained that he "agreed to a public reprimand before The Florida Bar" for failing to timely pay a mediated settlement to a client, but that there was "no showing of dishonesty" and he was never suspended from the practice of law. Respondent also revealed that, 22 and 18 years earlier, "two judges vindictively stated that I could not practice before them after I challenged rulings they had made on the basis of bias and prejudice." He explained that those exclusions applied only to the two judges themselves, Judge

4

William D. Keller of the U.S. District Court for the Central District of California and Judge Denny Chin of the U.S. District Court for the Southern District of New York. He said that the "bars of the District of Columbia and Florida reviewed these rulings and found that I did not act unethically" and that he was currently in good standing in both jurisdictions.

19.     On March 31, 2016, the district court denied Respondent's Verified Petition "for failure to fully disclose disciplinary actions and related documents." The district court found that Respondent's statement that the matter regarding Judicial Watch pending in D.C. "is likely to be resolved in my favor and there has been no disciplinary action" was "misleading and incomplete." The district court had, on its own, learned that in the D.C. disciplinary proceedings, Respondent had signed an Affidavit of Negotiated Discipline and a Petition for Negotiated Discipline in which he stipulated to misconduct in three different cases and consented to a public censure. Respondent had failed to disclose either of these documents to the district court. The district court found that they were "admissions of three separate incidents of stipulated misconduct that were not clearly disclosed in [Respondent]'s Verified Petition."

20.     The district court denied the petition, but without prejudice. The district court then explained:

> Should Klayman wish to file a new Verified Petition with the Court, the following information should be included: (1) the case numbers for the cases before Judge William D. Keller and Judge Denny Chin that resulted in these judges precluding Klayman's practice before them; (2) verification of the review by the Bar Associations of the District of Columbia and Florida finding that Klayman did not act unethically before Judges Keller and Chin; (3) an updated Certificate of Good Standing from the Supreme Court of Florida; (4) the Florida Bar Association's reprimand verifying that there was no showing of dishonesty in connection with their disciplinary action; (5) the Exhibits attached to this Order [the Affidavit of Negotiated Disposition and Petition for Negotiated Discipline that Respondent signed and were filed in the D.C. disciplinary proceeding on June 23, 2004]; and (6) verification that the matter in the District of Columbia disciplinary case referenced in the Verified Petition has been resolved with no disciplinary action.

21.     On April 7, 2016, Respondent filed a "Supplement to and Renewed Verified Petition" for permission to practice in the court as counsel for Bundy in his criminal case.[2] Respondent provided evidence and explanations for items (1) - (5) of the district court's requirements as follows: (1) he provided the case names and citations for the actions involving Judges William D. Keller and Denny Chin; (2) he provided a letter from the D.C. Bar finding no ethical violation in the Keller and Chin matters, but said that the Florida Bar's files were no longer accessible; (3) he provided an updated letter of good standing from the Supreme Court of Florida; (4) he provided a copy of Florida's reprimand; and (5) he provided the exhibits attached to the district court's March 2016 order.  As to the district court's sixth requirement, Respondent disputed the conclusion the district court drew from the documents it had identified.  The court, he said, "appears to have misunderstood the nature and current posture of the disciplinary proceeding underway" in the District of Columbia.

> [T]he prior attempted negotiated discipline never entered into effect and Mr. Klayman never chose to pursue any further proposed negotiated discipline as he . . . did not violate any ethical provision of the District of Columbia Code of Professional Responsibility. Bar Counsel and Mr. Klayman had attempted to resolve the matter by agreement, but Mr. Klayman later thought the better of having signed the affidavit and agreeing to negotiated discipline it [sic] since he feels strongly that he acted ethically at all times.

With his supplement statement, Respondent provided a letter prepared by Professor Ronald Rotunda giving his "expert" opinion that "Respondent ha[d] not committed any offense that merits discipline."  Respondent also attached his "post-hearing brief" to the Hearing Committee in the D.C. disciplinary matter, but did not describe the evidence offered at the

---

[2]     The district court noted that, contrary to its order, Respondent did not file a new Verified Petition.  Thus, it construed his Renewed Petition as a request for reconsideration of the original Verified Petition.

hearing (although he did say it did not include his affidavit or prior admissions), and the brief itself did not explain the procedural posture of the D.C. disciplinary proceeding. Respondent did not include the brief Disciplinary Counsel had filed in the matter. Respondent repeated that he was "confident of ultimately prevailing . . . since the ultimate finding of the Committee which heard the evidence is simply a recommendation" that the Board and D.C. Court would review.

22.     The district court treated Respondent's renewed filing as a request for reconsideration and denied it on April 19, 2016. The district court did not discuss the first five conditions imposed in its March 31 Order, but only the sixth – the D.C. disciplinary matter. The court noted that Respondent "admit[ted] that [the D.C. matter] is still pending," and thus there was "no error with its prior ruling." The court ordered that "Klayman's Verified Petition shall remain denied without prejudice until such time as Klayman can provide proof that the ethical disciplinary proceeding in the District of Columbia has been resolved in his favor."

### The Bivens Action Against the Federal District Judge and Others

23.     On May 10, 2016, a few weeks after the district court denied Respondent's renewed request for *pro hac vice* admission, Bundy filed a Bivens action against Chief Judge Gloria Navarro (the district court judge who had denied  Respondent's *pro hac vice* petition) and others including Senator Harry Reid and his son, and President Obama for allegedly conspiring against him. In the complaint, Bundy alleged, among other things, that the district court had denied Respondent *pro hac vice* admission for political reasons and she was biased and prejudiced.

24.     On May 20, 2016, Bundy filed a motion to disqualify Chief Judge Novarra based on the allegations in the Bivens lawsuit pending against her. The district court denied the motion.

25.     Respondent did not sign and was not listed as counsel on the Bivens complaint against the district court judge and others. Respondent, however, was listed as "of counsel" on subsequent pleadings filed on behalf of Bundy in the Bivens action, and his D.C. Bar number and D.C. office were provided in the caption of those pleadings.

26.     On October 12, 2016, the Bivens action was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A) based on the stipulation of all the parties. The parties dismissed the action approximately a week after the Ninth Circuit issued a briefing schedule in connection with Respondent's first petition for writ of mandamus.

### Respondent's Successive Petitions for Writ of Mandamus

27.     On July 6, 2016, Respondent filed an Emergency Petition for Writ of Mandamus with the Ninth Circuit. Respondent requested that the Ninth Circuit compel the district court to admit him *pro hac vice* and argued that Bundy's Sixth Amendment right to counsel would be violated if he were forced to go to trial without his attorney of choice.

28.     Chief Judge Navarro filed a response to the Ninth Circuit defending the district court's decision not to admit Respondent. The district court also offered additional evidence and grounds for its refusing to grant Respondent *pro hac vice* status, including: (1) Respondent had failed to accurately and truthfully describe the D.C. disciplinary proceedings and had failed to disclose that a hearing committee had rejected the negotiated disposition because the sanction of public censure was unduly lenient; (2) Respondent failed to mention or disclose other court findings relevant to question five on the petition, and the district court listed eight cases in which the courts had revoked or denied Respondent *pro hac vice* status because of his "inappropriate and unethical behavior"; (3) Respondent had misrepresented the two cases in which two district court had banned him from their courtrooms and had failed to disclose that the trial court's decisions

were affirmed on appeal, and the Second Circuit in affirming one of the decisions found that Respondent's challenge to a district court's impartiality was "insulting and smacked of intimidation"; and (4) that Respondent had been involved in the Bivens action that Bundy filed against President Obama, Senator Reid, and the district court judge who denied Respondent's *pro hac vice* admission, alleging they had conspired to violate his civil rights.

29.    On October 28, 2016, the Ninth Circuit denied Respondent's request for mandamus relief. The Ninth Circuit concluded:

> Klayman has made misrepresentations and omissions to the district court regarding the ethics proceedings before the District of Columbia Bar; he has shown a pattern of disregard for local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial process by suing the district judge personally. By any standard, the district court properly denied his petition to be admitted *pro hac vice*. Bundy is entitled to a fair trial, defended by competent, vigorous counsel of his choosing. But his right to such counsel does not extend to counsel from outside the district who has made it a pattern or practice of impeding the ethical and orderly administration of justice.[3]

30.    On November 10, 2016, Respondent filed an emergency petition with the Ninth Circuit requesting rehearing en banc. On December 13, 2016, the Ninth Circuit denied the petition for rehearing.

31.    On January 17, 2017, Respondent filed an emergency petition for writ of mandamus with the Supreme Court, which he supplemented twice. Respondent misrepresented that Bundy's trial would commence on February 6, 2017, when it was actually scheduled to begin 30 days after the completion of the February 6, 2016 trial of other defendants in the case. The Supreme Court denied the petition on February 27, 2017. *In re Bundy*, 137 S. Ct. 1213 (S. Ct. 2017).

---

[3]    Chief Judge Gould dissented based on his conclusion that Bundy's Sixth Amendment right to chosen counsel should have taken precedence over the issue of Respondent's candor.

32.     On March 9, 2017, Respondent filed a second emergency petition for writ of mandamus with the Ninth Circuit, raising many of the same arguments he had in his first petition and additional arguments that Ninth Circuit found had no merit or were false.

33.     The Ninth Circuit denied Respondent's second petition in a per curiam opinion on March 30, 2017. *In re Bundy*, 852 F.3d 945 (9th Cir. 2017). The Ninth Circuit found that Respondent's second petition was "procedurally irregular" and substantively had "no merit[]". The Ninth Circuit found that there was no credible evidence to support Respondent's claim that the district court had threatened Bret Whipple, Bundy's lawyer in the criminal case, with contempt, and that Respondent's claims about Whipple, including that he had little or no federal criminal defense experience, were "demonstrably false." The Ninth Circuit concluded that the documents Respondent filed "in support of the petition for a writ of mandamus – by themselves and without looking to our earlier decision's consideration of Klayman's record – entirely support the district court's decision [to deny him *pro hac vice* admission]. The petition and reply contain patently false allegations and lack the most basic of due diligence in fact checking." 852 F.3d at 953.[4]

34.     On April 3, 2017, Respondent filed an emergency petition for rehearing en banc. No judge requested a vote on whether to rehear the matter en banc, and the Ninth Circuit denied Respondent's request for an en banc rehearing on May 15, 2017.

35.     On May 18, 2017, Respondent filed a "Motion to Correct the Record Regarding False Allegations of Misstatements to this Court and the District Court" and an accompanying brief. Respondent alleged that the district court and Judge Bybee of the Ninth Circuit (the judge who had written the decisions denying Respondent's first two mandamus petitions) had made false allegations against him. Respondent insisted he had not made any misrepresentations or omitted

---

[4]     Chief Judge Gould dissented but for the reason he did in his dissent of the first petition.

any information he was required to disclose. He alleged that "the 'issue' of [his] truthfulness only arose when the District Court was pressed for a reason why it had arbitrarily and capriciously denied [his] *pro hac vice* application by [the Ninth Circuit] and thereby fabricated this diversionary tactic to protect itself."

36.     The Ninth Circuit denied Respondent's "Motion to Correct the Record" on May 23, 2017.

37.     On June 14, 2017, Respondent filed a "Motion for a Separate Judicial Panel to Rule on Klayman's Motion to Correct Record." Respondent alleged that Judge Bybee should not be allowed "to rule on his own misconduct."

38.     The Ninth Circuit denied the motion the next day, June 15, 2017.

39.     Respondent again sought review by the Supreme Court, filing a petition for writ of mandamus on July 21, 2017, and two supplemental briefs. The Supreme Court denied the petition for review on October 2, 2017 and denied Respondent's subsequent petition for rehearing on October 30, 2017.

40.     While he was seeking review by the Supreme Court of the denial of his second mandamus petition, Respondent filed a third emergency petition for writ of mandamus with the Ninth Circuit on October 2, 2017.

41.     The Ninth Circuit denied the petition two days later on October 4, 2017.[5]

42.     On October 6, 2017, Respondent filed under seal an emergency motion for a separate judicial panel with a "judicial council complaint." The Ninth Circuit denied the motion for a separate judicial panel that same day.

---

[5]     As he had had before, Chief Judge Gould dissented, saying he would grant the petition to give Bundy his lawyer of choice.

43.     On December 20, 2017, Chief Judge Navarro declared a mistrial in the criminal against Bundy, who continued to be represented by Whipple. On January 8, 2018, Chief Judge Navarro granted the motions of Bundy and other defendants to dismiss the charges against them with prejudice.

44.     Several months before Chief Judge Navarro's rulings of December 20, 2017, the Hearing Committee issued its report in Respondent's disciplinary matter finding that he had violated Rule 1.9 in three matters and Rule 8.4(d) in one of those matters, and recommending he be suspended for 90 days with a fitness requirement.

45.     On February 6, 2018, the Board on Professional Responsibility issued its report and recommendation in the disciplinary matter against Respondent.    The Board accepted the Committee's findings of fact, agreed that Respondent had violated Rule 1.9 in three matters, but disagreed that he violated Rule 8.4(d), although saying it was a "close question." The Board also recommended a 90-day suspension, but without a fitness requirement.

46.     On February 6, 2018, the same day the Board issued its report, Respondent filed his fourth petition for writ of mandamus with the Ninth Circuit, which he amended on February 7, 2018. Respondent contended that the Ninth Circuit's and district court's previous orders should be vacated because they were now moot based on the dismissal of the underlying criminal matter against Bundy. Respondent also contended that "Judge Bybee's order" must be vacated because of Judge Bybee's alleged bias. According to Respondent, Judge Bybee's decision to rule against Respondent "can only be explained by the appearance of Judge Bybee's extrajudicial bias and prejudice stemming from his personal relationships, friendships, and associations with Judge Navarro and Sen. Reid, . . ." Respondent requested that Judge Bybee not be included in the judicial panel ruling on his fourth petition.

47.     In support of his claim that Judge Bybee had extrajudicial bias, Respondent made a number of assertions that had no basis and were frivolous, that included but were not limited to:

(a)     Judge Bybee demonstrated his bias and reacted to his friendship and personal relationship with the District Court Judge and Sen. Reid, by asking Respondent questions about the Bivens action filed against the District Court Judge, Sen. Reid, and President Obama during the oral argument in the first mandamus petition (the questions Respondent attributed to Judge Bybee were asked by another Judge on the Panel);

(b)     Judge Bybee assumed in his questions (which were actually asked by another judge) that Respondent had something to do with the Bivens action (Respondent had initially said that he was a plaintiff in the Bivens action before clarifying he was not a party, although he was involved in the action as he was listed "of counsel" in numerous pleadings filed on behalf of Bundy);

(c)     Judge Bybee and Judge Navarro "are close friends and associates" by virtue of the fact that Judge Bybee was a "founding faculty member" of UNLV's law school, and Judge Navarro received her undergraduate degree from UNLV;

(d)     Judge Bybee had a "longstanding relationship, friendship and association" with Sen. Reid as evidenced by Sen. Reid's statements about Judge Bybee in 2003 in connection with his nomination to the Ninth Circuit in 2003, and Judge Bybee was "return[ing] the favor" by denying Respondent's *pro hac vice* application; and

(e)     Judge Bybee and Sen. Reid had a "social and familiar relationship" because Judge Bybee's wife Shannon and Sen. Reid were both inducted within one year of one another as members of the same UNLV organization (Shannon Bybee, a male, was never married to Judge Bybee, and died in 2003).

13

48.     Respondent further alleged that "[t]he fact remains, however, that Mr. Klayman has never once been found to have acted unethically by any bar association who reviewed his conduct before a judge." When Respondent made this statement, he knew that the Hearing Committee had found by clear and convincing evidence that he had violated Rule 1.9 in three matters, and Rule 8.4(d) in one of those matters.

49.     Respondent also alleged that Judge Gould "clearly and unequivocally found that [Respondent] had fulfilled his obligation of candor and truthfully answered all the questions presented to him . . ." Respondent then quoted a statement by Judge Gould in his initial dissent, but omitted the Judge's concluding sentence in the quoted paragraph which read: "Yet, for [Respondent] to tell the district court that it was wrong about the negotiated discipline being in effect and to not also tell the court why the disposition lacked effect – its rejection by the bar committee – may have been a relevant omission."

50.     On February 13, 2018, the Ninth Circuit denied Respondent's request that Judge Bybee be recused from the matter.

51.     On April 24, 2018, the Ninth Circuit denied Respondent's fourth writ of mandamus.[6]

52.     On July 20, 2018, Respondent filed another petition for writ of mandamus with the United States Supreme Court. In this petition, Respondent repeated his claim that although the district court had found he had been untruthful, "Judge Gould, in his forceful, compelling, well-

---

[6]     Judge Gould dissented. He said he did not share Respondent's view that there had been any bias against him by any member of the panel, but found "these proceedings have become overblown." Judge Gould reiterated his belief that the initial denial of Respondent's *pro hac vice* admission was wrong.

reasoned, and factually accurate dissents emphatically found that this was not the case." Judge Gould's dissenting opinions did not support Respondent's claim. See paragraph 49 above.

53.     Respondent's conduct violated the following D.C. Rules of Professional Conduct and/or the Nevada Rules of Professional Conduct, and/or Rule 46(c) of the Federal Rules of Appellate Procedure for the United States Court of Appeals for the Ninth Circuit,[7] as made applicable by D.C. Rule 8.5(b)(1) – all of which prohibit the same or substantially similar conduct:

        a.      Rule 3.1, in that Respondent asserted or controverted an issue when there was no basis in law and fact for doing so that was not frivolous;

        b.      Rule 3.3(a), in that Respondent knowingly made a false statement of fact to a tribunal or failed to correct a false statement of material fact previously made to the tribunal;

        c.      Rule 8.1, in that in his application and supplemental application for admission to the district court, Respondent knowingly made false statements of fact or material fact, and he failed to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in the matter;

        d.      Rule 8.4(a), in that Respondent knowingly assisted or induced another to violate the Rules of Professional Conduct or did so through the acts of another;

        e.      Rule 8.4(c), in that Respondent engaged in conduct involving dishonesty, deceit, and misrepresentation; and

---

[7]     FRAP 46(c) provides that "[a] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." In determining what constitutes "conduct unbecoming" a lawyer, the Ninth Circuit has looked to the ABA Model Rules and the state rules where the lawyer maintains his practice. *See, e.g., Rodriquez v. Robbins*, 797 F.3d 758, 759 (9th Cir. 2015); *In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010)

15

f.      Rule 8.4(c), in that Respondent engaged in conduct involving dishonesty, deceit, and misrepresentation; and

g.      Rule 8.4(d), in that Respondent engaged in conduct seriously interfering with or prejudicial to the administration of justice.

Respectfully submitted,

Hamilton P. Fox, III
Disciplinary Counsel

Julia Porter
Deputy Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

## VERIFICATION

I do affirm that I verily believe the facts stated in the Specification of Charges to be true.

Julia L. Porter
Deputy Disciplinary Counsel

Subscribed and affirmed before me in the District of Columbia this 20th day of August 2018.

My Commission Expires: _____

_____
Notary Public

16

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of                                   :
                                                   :
LARRY E. KLAYMAN, ESQUIRE                           :
                                                   :
    Respondent,                                    :
                                                   :
A Member of the Bar of the                          :
District of Columbia Court of Appeals.              :
Bar Number: 334581                                  :
Date of Admission: December 22, 1980                :
                                                   :

**RECEIVED**

**AUG 2 1 2018**

Board on Professional Responsibility

Disciplinary Docket No. 2017-D051

## PETITION INSTITUTING FORMAL DISCIPLINARY PROCEEDINGS

A.      This Petition (including the attached Specification of Charges which is made part of this Petition) notifies Respondent that disciplinary proceedings are hereby instituted pursuant to Rule XI, § 8(c), of the District of Columbia Court of Appeals' Rules Governing the Bar (D.C. Bar R.).

B.      Respondent is an attorney admitted to practice before the District of Columbia Court of Appeals on the date stated in the caption of the Specification of Charges.

C.      A lawyer member of a Hearing Committee assigned by the Board on Professional Responsibility (Board) pursuant to D.C. Bar R. XI, § 4(e)(5), has approved the institution of these disciplinary proceedings.

D.      *Procedures*

    (1)     **Referral to Hearing Committee** – When the Board receives the Petition Instituting Formal Disciplinary Proceedings, the Board shall refer it to a Hearing Committee.

(2)     **Filing Answer** – Respondent must respond to the Specification of Charges by filing an answer with the Board and by serving a copy on the Office of Disciplinary Counsel within 20 days of the date of service of this Petition, unless the time is extended by the Chair of the Hearing Committee.  Permission to file an answer after the 20-day period may be granted by the Chair of the Hearing Committee if the failure to file an answer was attributable to mistake, inadvertence, surprise, or excusable neglect.  If a limiting date occurs on a Saturday, Sunday, or official holiday in the District of Columbia, the time for submission will be extended to the next business day.  Any motion to extend the time to file an answer, and/or any other motion filed with the Board or Hearing Committee Chair, must be served on the Office of Disciplinary Counsel at the address shown on the last page of this petition.

(3)     **Content of Answer**   –   The answer may be a denial, a statement in exculpation, or a statement in mitigation of the alleged misconduct.  Any charges not answered by Respondent may be deemed established as provided in Board Rule 7.7.

(4)     **Mitigation** – Respondent has the right to present evidence in mitigation to the Hearing Committee regardless of whether the substantive allegations of the Specification of Charges are admitted or denied.

(5)     **Process** –  Respondent is entitled to fifteen days' notice of the time and place of hearing, to be represented by counsel, to cross-examine witnesses, and to present evidence.

E.     In addition to the procedures contained in D.C. Bar R. XI, the Board has promulgated Board Rules relating to procedures and the admission of evidence which are applicable to these procedures.  A copy of these rules is being provided to Respondent with a copy

2

of this Petition.

      **WHEREFORE**, the Office of Disciplinary Counsel requests that the Board consider whether the conduct of Respondent violated the District of Columbia Rules of Professional Conduct, and, if so, that it impose/recommend appropriate discipline.

OFFICE OF DISCIPLINARY COUNSEL

BY: _Hamilton P. Fox, 3_

Hamilton P. Fox, III
Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
TELEPHONE: (202) 638-1501
FAX: (202) 638-0862

# EXHIBIT 3

## DISTRICT OF COLUMBIA COURT OF APPEALS
## BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of              :
                              :
    **LARRY E. KLAYMAN, ESQUIRE,**   :   **Bar Docket No.  2011-D028**
                              :
    Respondent            :
                              :
A Member of the Bar of the District of   :
  Columbia Court of Appeals     :
Bar Number: 334581            :
Date of Admission: December 22, 1980   :
                              :



### SPECIFICATION OF CHARGES

    The disciplinary proceedings instituted by this petition are based upon conduct that violates the standards governing the practice of law in the District of Columbia as prescribed by D.C. Bar Rule X and D.C. Bar Rule XI, § 2(b).

    Jurisdiction for this disciplinary proceeding is prescribed by D.C. Bar Rule XI.  Pursuant to D.C. Bar Rule XI, § 1(a), jurisdiction is found because:

    1.    Respondent is a member of the Bar of the District of Columbia Court of Appeals, having been admitted by exam on December 22, 1980, and assigned Bar number 334581.

    The conduct and standards that Respondent has violated are as follows:

### COUNT I

    2.    In or about January 2010, Respondent undertook to represent Ms. Elham Sataki in connection with her claims of sexual harassment by a co-worker, Mr. Mehdi Falahati, while employed with the Persian News Network (PNN) of Voice of America (VOA).  PNN-VOA is managed by the Broadcasting Board of Governors (BBG), a federal agency responsible for the

United States Government's international broadcasting. Respondent had not previously represented Ms. Sataki in a legal matter.

3.      Respondent told Ms. Sataki that he would represent her on a contingent fee basis and that he would take 40% of any recovery. Respondent did not provide his client a writing setting forth the scope of the representation or how his fee would be calculated. Respondent also did not explain to his client, in writing, whether or how expenses would be deducted from any recovery in the case.

4.      Ms. Sataki requested that Respondent prosecute her case simply and quietly, out of her concerns for her future career in the media and in light of cultural issues due to the nature of her sexual harassment claim.

5.      During the course of the representation, Respondent told Ms. Sataki about his desire to establish a romantic relationship with her.

6.      Ms. Sataki declined Respondent's entreaties to establish a romantic relationship.

7.      In or about May 2010, Respondent sent correspondence to Ms. Sataki acknowledging her decision not to become romantically involved with him. Respondent also informed Ms. Sataki that he would change the terms of their contingent fee arrangement, and require 50% of any recovery she may receive.

8.      Respondent's conduct violated the following District of Columbia Rules of Professional Conduct ("Rules"):

        a.      Rule 1.5(b), in that Respondent had not regularly represented his client and failed to provide her with a writing setting forth the scope of the representation, the basis or rate of his fee, and the expenses for which she would be responsible;

        b.      Rule 1.5(c), in that Respondent undertook to represent his client on a

2

contingent fee basis, but failed to provide her with a writing that stated the method by which the fee would be determined, including the percentages that would accrue to the lawyer and whether or how expenses would be deducted from the recovery; and

      c.     Rule 1.7(b)(4), in that Respondent had a conflict of interest with the client because his professional judgment on behalf of his client was or reasonably may have been adversely affected by Respondent's own personal interests.

**COUNT II**
**[Sataki v. Falahati – CA. No. 10-466 (CKK)]**

9.     Disciplinary Counsel incorporates the factual allegations set forth in paragraphs 1-7, as if fully set forth herein, and further alleges:

10.     On March 1, 2010, Respondent filed in the Superior Court for the District of Columbia, a lawsuit on behalf of Ms. Sataki, styled *Sataki v. Falahati*, CA No. 0001169-10. The lawsuit alleged: assault, battery, false light, defamation, tortious interference with business relations, and intentional infliction of emotional distress.

11.     On March 19, 2010, Ms. Sataki's case was removed from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia, and was styled *Sataki v. Falahati*, CA No. 10-466 (CKK).

12.     On July 12, 2010, the court issued an order dismissing Ms. Sataki's case, without prejudice.

13.     On July 26, 2010, Respondent filed in the United States District Court for the District of Columbia, a motion to disqualify the judge presiding over Ms. Sataki's case. As grounds for the motion, Respondent alleged that the presiding judge, Colleen Kollar-Kotelly, who had been appointed by United States President William Jefferson Clinton, was biased against him

3

because he had filed several lawsuits against the former President and the former First Lady, Hillary Rodham Clinton. Respondent filed the motion under the caption of three cases pending in that court styled: (1) *Klayman v. Judicial Watch*, CA No. 06-cv-00670 (CKK); (2) *Sataki v. BBG*, CA No. 10-0534 (CKK); and (3) *Sataki v. Falahati*, CA No. 10-cv-00466 (CKK).

14.     Respondent's filing of the motion to disqualify was inconsistent with Ms. Sataki's request that Respondent pursue her case simply and quietly, and served no purpose to advance his client's case. Instead, the motion to disqualify served Respondent's own personal interests. Ms. Sataki did not know Respondent would file a motion to disqualify and did not authorize Respondent to file it.

15.     On August 2, 2010, the court denied Respondent's motion to disqualify as untimely, inasmuch as the case had been dismissed on July 12, 2010.

16.     Respondent's conduct violated the following Rules:

a.      Rule 1.7(b)(4), in that Respondent had a conflict of interest with the client because his professional judgment on behalf of the client was or reasonably may have been adversely affected by Respondent's own personal interests;

b.      Rule 1.2(a), in that Respondent failed to abide by his client's decisions concerning the objectives of his representation; and

c.      Rule 1.4(b) in that Respondent failed to reasonably explain a matter to his client to permit her to make an informed decision regarding the representation.

### COUNT III
#### [*Sataki v. BGG* – CA No. 10-534 (CKK)]

17.     Disciplinary Counsel incorporates the factual allegations set forth in paragraphs 1-7 and 10-15, as if fully set forth herein, and further alleges:

4

18.     On April 2, 2010, Respondent filed in the United States District Court for the District of Columbia, a lawsuit on behalf of Ms. Sataki against fourteen defendants, including the BBG, four of the governors of the BBG, the Chief of Staff to the BBG, the Acting General Counsel of the BBG, the acting chief of PNN/VOA, the senior manager of PNN/VOA, the executive producers of PNN/VOA, a supervisor of human resources at PNN/VOA and Hillary Rodham Clinton as Secretary of State Ex-Officio Member of the BBG, alleging that defendants infringed upon Ms. Sataki's constitutional right to freedom of speech, and violated her rights to due process and to equal protection under the law.    Respondent also alleged that defendants discriminated against Ms. Sataki in violation of the Rehabilitation Act on the basis of her physical or mental disabilities and that defendants violated the Privacy Act by failing to produce documents to her from to her personnel file.    That matter was styled *Sataki v. BBG*, CA No. 10-534 (CKK).    In connection with this lawsuit, Respondent sought affirmative injunctive relief to require PNN/VOA to reassign Ms. Sataki from her job in Washington, D.C. to a position with PNN/VOA in Los Angeles, California.

19.     The only defendant required to be named in the lawsuit was the Chief or Acting Chief of the Voice of America.    Hillary Rodham Clinton was not a necessary defendant in the *Sataki* v. BBG lawsuit.

20.     On June 1, 2010, the Court issued an order denying Plaintiff's motion for a temporary restraining order that sought the affirmative injunctive relief of reassigning Ms. Sataki from her job in Washington, D.C., to a position with PNN-VOA in Los Angeles, California.

21.     On June 9, 2010, Respondent filed a motion with the court requesting that Ms. Sataki's case be reassigned to another judge.    As grounds for the motion, Respondent alleged that the current trial judge, Colleen Kollar-Kotelly "harbors an animus" towards him because of her

5

association with former President William Jefferson Clinton and former First Lady Hillary Rodham Clinton, and because of certain lawsuits Respondent had filed against the Clintons.

22.    Respondent's filing of the motion to reassign was inconsistent with Ms. Sataki's request that Respondent pursue her case simply and quietly, and served no purpose to advance his client's case.  Instead, the motion to reassign served Respondent's own personal interests.  Ms. Sataki did not know that Respondent would file the motion to reassign her case to another trial judge and did not authorize Respondent to file it.

23.    On July 7, 2010, the court issued an order denying Respondent's motion to reassign.

24.    In or about August, 2010, Ms. Sataki terminated Respondent as her lawyer.

25.    On October 22, 2010, the court issued an order granting defendants' motion to dismiss and dismissed Ms. Sataki's case, without prejudice.

26.    On October 31, 2010, after having been terminated by Ms. Sataki in August, 2010, Respondent filed with the Court a motion to reconsider the order dismissing her case.

27.    On November 15, 2010, Ms. Sataki sent correspondence to Respondent reiterating that she had terminated his services, and directed him to immediately withdraw.

28.    On December 9, 2010, Respondent, filed with the Court, a motion for extension of time to reply to the government's opposition to plaintiff's motion for reconsideration.

29.    On December 17, 2010, Respondent filed with the Court a reply to defendants' opposition to plaintiff's motion for reconsideration of its order of dismissal.

30.    On December 20, 2010, Respondent filed with the Court a supplemental memorandum to the reply to the defendants' opposition to plaintiff's motion to reconsider the order of dismissal.

31.    On December 21, 2010, the Court issued an order denying plaintiff's motion to

reconsider the dismissal of her case.

32.     On January 10, 2011, Respondent filed with the court a "Notice of Praecipe by Elham Sataki".

33.     On January 19, 2011, Respondent filed a notice of appeal.

34.     Respondent's conduct violated the following Rules:

a.      Rule 1.7(b)(4), in that Respondent had a conflict of interest with the client because his professional judgment on behalf of the client was or reasonably may have been adversely affected by Respondent's own personal interests;

b.      Rule 1.4(b), in that Respondent failed to reasonably explain a matter to his client to permit her to make an informed decision about the representation;

c.      Rule 1.2(a), in that Respondent failed to abide by his client's decisions concerning the objectives of his representation; and

d.      Rule 1.16(a)(3), in that Respondent failed to withdraw from the representation after he had been discharged by his client.

## COUNT IV

35.     Disciplinary Counsel incorporates the factual allegations set forth in paragraphs 1-7, 10-15, 17-33, as if fully set forth herein, and further alleges:

36.     WorldNetDaily is a periodical that can be accessed on the world-wide web. According to its own website, dated February 19, 2015, "WND currently attracts nearly 5 million unique visitors per month and more than 40 million page views, according to its own internal monitoring software."

37.     On or about April 30, 2010, Respondent authored an article that was published by WorldNetDaily that described, in part, his representation of Ms. Sataki and her claims against

7

VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation.

38.    On or about May 11, 2010, Respondent contributed to another article that was published by the WorldNetDaily describing, in detail, the lawsuit Respondent filed on behalf of Ms. Sataki against VOA. Ms. Sataki did not know that Respondent would contribute to an article about her case that would be published. Ms. Sataki did not consent to the publication of the article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation.

39.    On or about May 14, 2010, Respondent authored another article that was published by WorldNetDaily describing, in detail, the lawsuit he filed on behalf of Ms. Sataki against VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation.

40.    On May 21, 2010, Respondent authored another article that was published in the WorldNetDaily that referenced his representation of Ms. Sataki against VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article, included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

8

41.     On May 28, 2010, Respondent authored another article that was published in the WorldNetDaily that referenced his representation of Ms. Sataki against VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

42.     On June 11, 2010, Respondent authored another article that was published in the WorldNetDaily that referenced his representation of Ms. Sataki against VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

43.     On or about July 2, 2010, Respondent authored another article that was published in the WorldNetDaily that referenced his representation of Ms. Sataki. Ms. Sataki did not know that Respondent would author the article about the representation that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article, included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

44.     On or about October 1, 2010, Respondent authored another article that was published in the WorldNetDaily that discussed details of his representation of Ms. Sataki against

VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation.

45.    On or about October 15, 2010, Respondent authored another article that was published in the WorldNetDaily that discussed Ms. Sataki's claims against VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article, included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

46.    On or about October 29, 2010, Respondent authored another article that was published in the WorldNetDaily that discussed Ms. Sataki's claims against VOA. Ms. Sataki did not know that Respondent would author an article concerning her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article, included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

47.    On or about December 25, 2010, Respondent authored another article that was published in the WorldNetDaily that discussed the litigation of Ms. Sataki's claims against VOA. In the article, Respondent, *inter alia,* falsely reported that the presiding judge had "dishonestly denied, without factual or legal bases (sic), my request for Elham to be put back at work at the Los Angeles office VOA, as she rehabilitated from the harm done to her." In fact, the presiding judge

10

issued an order dated June 1, 2010 in the matter styled *Sataki v. BGG*, CA No. 10-0534 (CKK), describing the factual and legal basis for the decision not to grant the relief Respondent sought for Ms. Sataki. Ms. Sataki did not know that Respondent would author an article about her case that would be published. Ms. Sataki did not consent to the publication of Respondent's article. Ms. Sataki was embarrassed by Respondent's disclosure of facts that he gained during the course of the representation. Respondent's article, included an advertisement for his book titled "Whores: Why and How I Came to Fight the Establishment."

48.     Respondent's conduct violated the following Rules:

a.     Rule 1.2(a), in that Respondent failed to abide by a client's decisions concerning the objectives of the representation;

b.     Rule 1.6(a)(1), in that Respondent revealed a confidence or secret of the client;

c.     Rule 1.6(a)(3), in that Respondent revealed a confidence or secret of the client for his own advantage;

d.     Rule 1.7(b)(4), in that Respondent had a conflict of interest with his client because his professional judgment on behalf of his client was or reasonably may have been adversely affected by Respondent's own personal interests; and

e.     Rule 8.4(c), in that Respondent engaged in conduct involving dishonesty and/or misrepresentation.

Respectfully submitted,

Elizabeth A. Herman
Deputy Disciplinary Counsel

11

_H. Clay Smith, III_
Assistant Disciplinary Counsel


OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501


## **VERIFICATION**


    I do affirm that I verily believe the facts stated in the Specification of Charges to be true.


_H. Clay Smith, III_
Assistant Disciplinary Counsel


    Subscribed and affirmed before me in the District of Columbia this 30th day of June, 2017.


My Commission Expires:

_____

_____
Notary Public

12

## DISTRICT OF COLUMBIA COURT OF APPEALS
## BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of                          :

LARRY E. KLAYMAN, ESQUIRE,                :        **Disciplinary Docket No.  2011-D028**

    Respondent                         :

                                          :

Member of the Bar of the District of      :
  Columbia Court of Appeals             :
Bar Number: 334581                        :
Date of Admission:  December 22, 1980     :



RECEIVED

JUL 2 0 2017

Board on Professional Responsibility

### PETITION INSTITUTING FORMAL DISCIPLINARY PROCEEDINGS

A.      This Petition (including the attached Specification of Charges which is made part of this Petition) notifies Respondent that disciplinary proceedings are hereby instituted pursuant to Rule XI, § 8(c), of the District of Columbia Court of Appeals' Rules Governing the Bar (D.C. Bar R.).

B.      Respondent is an attorney admitted to practice before the District of Columbia Court of Appeals on the date stated in the caption of the Specification of Charges.

C.      A lawyer member of a Hearing Committee assigned by the Board on Professional Responsibility (Board) pursuant to D.C. Bar R. XI, § 4(e)(5), has approved the institution of these disciplinary proceedings.

D.      *Procedures*

    (1)      **Referral to Hearing Committee** – When the Board receives the Petition Instituting Formal Disciplinary Proceedings, the Board shall refer it to a Hearing Committee.

(2)     **Filing Answer** – Respondent must respond to the Specification of Charges by filing an answer with the Board and by serving a copy on the Office of Disciplinary Counsel within 20 days of the date of service of this Petition, unless the time is extended by the Chair of the Hearing Committee.   Permission to file an answer after the 20-day period may be granted by the Chair of the Hearing Committee if the failure to file an answer was attributable to mistake, inadvertence, surprise, or excusable neglect.  If a limiting date occurs on a Saturday, Sunday, or official holiday in the District of Columbia, the time for submission will be extended to the next business day.  Any motion to extend the time to file an answer, and/or any other motion filed with the Board or Hearing Committee Chair, must be served on the Office of Disciplinary Counsel at the address shown on the last page of this petition.

(3)     **Content of Answer**   –    The answer may be a denial, a statement in exculpation, or a statement in mitigation of the alleged misconduct.  Any charges not answered by Respondent may be deemed established as provided in Board Rule 7.7.

(4)     **Mitigation** – Respondent has the right to present evidence in mitigation to the Hearing Committee regardless of whether the substantive allegations of the Specification of Charges are admitted or denied.

(5)     **Process**   –   Respondent is entitled to fifteen days' notice of the time and place of hearing, to be represented by counsel, to cross-examine witnesses, and to present evidence.

E.     In addition to the procedures contained in D.C. Bar R. XI, the Board has promulgated Board Rules relating to procedures and the admission of evidence which are applicable to these procedures.  A copy of these rules is being provided to Respondent with a copy

2

of this Petition.

**WHEREFORE**, the Office of Disciplinary Counsel requests that the Board consider whether the conduct of Respondent violated the District of Columbia Rules of Professional Conduct, and, if so, that it impose/recommend appropriate discipline.

OFFICE OF DISCIPLINARY COUNSEL

BY: _____

Hamilton P. Fox, III
Disciplinary Counsel

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C. 20001
TELEPHONE: (202) 638-1501
FAX: (202) 638-0862