# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *Plaintiff*, v. ESTHER LIM, *et al.*, *Defendants*. | Civil Action No. 18-2209 (RDM) |

## MEMORANDUM OPINION

Plaintiff Larry Klayman, proceeding *pro se*, brings this action against the District of Columbia Bar and its president, Esther Lim; the Office of Disciplinary Counsel ("ODC"), which serves as the chief prosecutor for attorney disciplinary matters; and four of its members: Hamilton Fox, Elizabeth Herman, H. Clay Smith, III, and Julia Porter. Plaintiff alleges that Defendants have violated the common law and the U.S. Constitution by pursuing charges against him for attorney misconduct arising from his efforts to appear *pro hac vice* as counsel for Cliven Bundy, a criminal defendant, before the U.S. District Court for the District of Nevada. This is not Plaintiff's first lawsuit challenging the lawfulness of pending disciplinary proceedings against him. In *Klayman v. Fox*, No. 18-cv-1579 (D.D.C. Jul. 3, 2018), Plaintiff accused many of the same defendants of conspiring to disbar him (or to force him to resign from the Bar) because of his political affiliation, conservative advocacy, and gender. After the ODC brought disciplinary charges against him relating to the Bundy case on August 21, 2018, Plaintiff filed this lawsuit, seeking to enjoin the pending disciplinary proceedings against him and seeking damages in excess of $75,000. Dkt. 1 at 21 (Compl. Prayer). This time, in addition to suing the ODC and its staff, he also sues the D.C. Bar and its president.

The matter is now before the Court on Defendants' motion to dismiss. Dkt. 7. The Court will, for the same reasons set forth in *Klayman v. Fox*, No. 18-cv-1579, slip op. (D.D.C. June 5, 2019) ("*Klayman I*"), grant the motion to dismiss Plaintiff's complaint against the ODC and its staff based on *Younger* abstention, the *non sui juris* status of the ODC, and absolute judicial immunity, and will dismiss Plaintiff's claims against the D.C. Bar and Lim for failure to state a claim. The Court will also grant Plaintiff's motion for leave to file a surreply. Dkt. 16.

## I. BACKGROUND

Much of the relevant background is detailed in *Klayman I*, No. 18-cv-1579, slip op. at 1–13, so the Court will only briefly summarize the relevant facts here. In short, Plaintiff, a self-described conservative activist, has been a member of the D.C. Bar since 1980. *Id.* at 4. He is currently the subject of three disciplinary proceedings under the auspices of the D.C. Court of Appeals. The first, based on his representation of three Judicial Watch employees ("Judicial Watch charges"), is awaiting a final decision from the D.C. Court of Appeals. *Id.* at 4–5. The second, based on his representation of Elham Sataki ("Sataki charges"), is pending before the Board of Professional Responsibility ("the Board"). *Id.* at 7. The third, based on his attempt to gain admission *pro hac vice* to appear before the U.S. District Court for the District of Nevada on behalf of Cliven Bundy ("Bundy charges"), has been referred to a Hearing Committee. *See* Dkt. 7-2 at 55–71 (Ex. 1) (Specification of Charges); *see also* D.C. Bar R. XI § 5(c)(1) (formal charges are first referred to a Hearing Committee).

On July 3, 2018, Plaintiff filed his first lawsuit, *Klayman I*, No. 18-cv-1579, alleging that Defendants were "pil[ing] on" baseless misconduct charges against him because of "[his] political beliefs, public activism, and gender," Dkt. 10 at 2, 10–11 (Amd. Compl. ¶¶ 1, 47), *Klayman I*, No. 18-cv-1579 (D.D.C.). At the time, the ODC had yet to charge him in connection

2

with his *pro hac vice* application before the U.S. District Court for the District of Nevada. Nevertheless, Plaintiff's amended complaint alleged that the Judicial Watch charges, the Sataki charges, and the then-impending Bundy charges were all part of Defendants' "conspiracy" to bankrupt and to disbar him. *See id.* at 2, 10–11 (Amd. Compl. ¶¶ 1, 47). After the ODC formally instituted the Bundy charges on August 21, 2018, *see* Dkt. 7-2 (Ex. 1) (Specification of Charges), Plaintiff filed this lawsuit, *see* Dkt. 1 (Compl.).

Although Plaintiff could have sought leave to file a second amended complaint in *Klayman I*, No. 18-cv-1579, based on the Bundy charges, he instead filed this separate case, alleging:

> This instant action is based upon the conduct of Defendants concerning the Bundy Complaint, wherein the Individual Bar Counsel Defendants and ODC initiated a proceeding before the Board of Professional Responsibility—by fraudulently inducing a member of the Board to sign off—when they were on notice that there are pending appellate proceedings before the Supreme Court and even the U.S. Court of Appeals for the Ninth Circuit.

Dkt. 1 at 6 (Compl. ¶ 21). The complaint also references both the Judicial Watch and Sataki charges. *See, e.g., id.* at 10 (Compl. ¶ 46) ("These three complaints are without merit, . . . and have been initiated against Mr. Klayman by the Individual Bar Counsel Defendants and ODC for the purpose of removing Mr. Klayman from the practice of law in order to, in effect, silence his public interest advocacy and work."); *id.* (Compl. ¶ 48) ("Defendants believe that they can 'pile on' by filing a new case or cases before [the Board], . . . effectively disbarring [Plaintiff].").

Plaintiff's complaint in this case copies, verbatim, much of his amended complaint in *Klayman I*, No. 18-cv-1579, and he alleges the same causes of action against the same defendants with only three differences. *First*, the complaint in this case addresses the Bundy matter in far greater detail. For instance, the complaint alleges that Defendants "rushed to file the Bundy Complaint" before Plaintiff's petitions for writs of mandamus before the Supreme

3

Court and the Ninth Circuit had "reached any type of final resolution." *Id.* at 9 (Compl. ¶¶ 37–39). He also alleges that "Defendants engaged in further illegalities by causing and furthering the publication of the filing of the Specification of Charges in the Bundy Complaint through the website Law360," *id.* (Compl. ¶ 41), in an attempt "to unethically communicate with the appellate courts to attempt to bias and prejudice them while they are deliberating on [his] pending appeals," *id.* (Compl. ¶ 42). *Second*, Plaintiff adds a fraud claim against Defendants, alleging that they "induced a member of the Board to sign off on the [Bundy] Specification of Charges" by "with[holding] . . . material information"—namely, that "there were pending appeals to the Supreme Court and the Ninth Circuit" challenging the denials of his petitions for writs of mandamus. *Id.* at 20 (Compl. ¶¶ 102–03). Third, Plaintiff has added the D.C. Bar and Lim as defendants in this case. *Id.* at 2 (Compl. ¶ 1). The relief Plaintiff seeks, however, remains the same: "actual, compensatory, and punitive damages . . . in an amount no less than $75,000 . . . as well as preliminary and permanent injunctive relief" enjoining the disciplinary proceedings against him. *Id.* at 21 (Compl. Prayer).

On November 1, 2018, Defendants moved to dismiss all of Plaintiff's claims. Dkt. 7. That motion, and Plaintiff's motion for leave to file a surreply, Dkt. 16, are now fully briefed.

## II. ANALYSIS

Defendants move to dismiss the complaint on five grounds: (1) Plaintiff's complaint violates the prudential rule against claim-splitting, Dkt. 7 at 12–13; (2) *Younger* abstention bars Plaintiff's claims for injunctive relief, *id.* at 13; (3) absolute immunity shields the individual ODC members from suit, *id.* at 13–14; (4) the ODC is not subject to suit, *id.* at 14; and (5) Plaintiff's complaint fails to state a claim for relief, *id.* at 15. Because the allegations and legal claims in this case mirror those in *Klayman I*, No. 18-cv-1579, the Court will dismiss the claims

4

against the ODC and its staff on the same grounds is relied on in *Klayman I*: *Younger* abstention, the fact that the ODC is *non sui juris*, and absolute immunity. The Court will dismiss Plaintiff's claims against the D.C. Bar and Lim for failure to state a claim.

A.  **Injunctive Claims**

As the Court explained in *Klayman I*, *Younger* abstention bars federal courts from enjoining certain, ongoing state proceedings. *See* slip op. at 14–15 (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79, 81 (2013)). Here, as in *Klayman I*, Plaintiff argues that *Younger* does not pose a bar to his claims for injunctive relief for two reasons:

First, Plaintiff argues that the Supreme Court's recent decision in *Sprint Communications*, 571 U.S. 69, narrowed the scope of *Younger* abstention and that Defendants have cited "no controlling authority post-*Sprint*" that holds "the *Younger* abstention doctrine is still applicable" to bar disciplinary proceedings. Dkt. 13 at 18. As explained in *Klayman I*, that contention is meritless. Indeed, far from holding that *Younger* abstention no longer applies to attorney disciplinary proceedings, *Sprint Communications* cited with approval to *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982), which held that *Younger* applies to "state-initiated disciplinary proceedings against [a] lawyer for violation of state ethics rules." *Sprint Commc'ns*, 571 U.S. at 79 (citing *Middlesex*, 457 U.S. at 433–34); *see also Klayman I*, slip op. at 15–16.

Second, Plaintiff argues that this case falls within the bad-faith exception to *Younger* abstention because his "well-pled [c]omplaint" alleges that "Defendants acted in bad faith by selectively prosecuting him in retaliation for his conservative public advocacy, political beliefs, free speech, and gender." Dkt. 13 at 20. For the reasons explained at length in *Klayman I*, Plaintiff has failed to allege specific facts sufficient to support invocation of *Younger*'s bad-faith

5

exception.  In short, Plaintiff's allegations of bad faith ultimately turn on the notion that a prosecutor or someone performing a similar function, who has made a political contribution, is invariably a partisan actor incapable of putting his or her personal views aside when charged with the fair administration of justice.  The bare allegations contained in the complaint in this action, as in *Klayman I*, No. 18-cv-1579, are far from sufficient to permit a "plausible" inference of the type of ubiquitous tribalism that Plaintiff's claim of bad faith posits.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

>Plaintiff adds one argument in this case, which he did not press in *Klayman I*.  He asserts:
>
>As further strong and compelling evidence of Defendants' bad faith, they have flat out ignored a factual finding by Judge Gould that Klayman is not guilty of the accusations against him in the Specification of Charges.  The Individual Bar Counsel and the other Defendants are well aware of Judge Gould's finding, and without an[y] basis to do so, are retaliating against him and arrogantly and improperly assuming the role of a higher authority, the U.S. Supreme Court, to overrule his finding.

Dkt. 13 at 21.  This new argument is flawed in several respects:

*First*, the assertion that Judge Gould found that Plaintiff "is not guilty of the accusations" contained in the Bundy Specification of Charges mischaracterizes Judge Gould's opinion.  The thrust of Judge Gould's opinion—as Judge Gould later explained—was that he "believe[d] that Bundy's needs for experienced defense counsel of his choosing [were] more important than the articulated concerns about [Plaintiff's] ethics, where he has not been disbarred or suspended by another bar association or proven to have engaged in unethical conduct that could justify disbarment."  *In re Bundy*, 852 F.3d 945, 953 (9th Cir. 2017) (Gould, J., dissenting).  Moreover, although Judge Gould observed that Plaintiff "had no greater duty to disclose any possible blemish on his career or reputation beyond responding to the district court's further direct requests," he also suggested that Plaintiff *might* be faulted fo failing to inform the district court

6

why his negotiated discipline "lacked effect"—that is, because "the bar committee" rejected the negotiated discipline as unduly lenient. *In Re Bundy*, 840 F.3d 1034, 1055 (9th Cir. 2016) (Gould, J., dissenting); *see also id*. at 1056 ("I do not dismiss lightly the district court's ethical concerns regarding [Plaintiff], especially the issue of candor.")

*Second*, Plaintiff casts Judge Gould's decision as though it represented the Ninth Circuit's "finding[s]" with respect to his conduct. Dkt. 13 at 6. In fact, he chastises Defendants for the "arrogan[ce]" of "assuming the role of . . . the U.S. Supreme Court[] to overrule [Judge Gould's] findings." *Id.* at 21. What Plaintiff ignores, however, is that Judge Gould was writing in dissent. Adhering to the views of the majority opinion, rather than the "findings" of the dissent, cannot by any stretch support a claim of "bad faith." And here, the majority held that Plaintiff "was not forthcoming with the district court," *In re Bundy*, 840 F.3d at 1044, in representing that "he withdrew his affidavit" and rejected public censure, "when, in fact, the Hearing Committee rejected it," *id.* (quoting district court findings).

*Finally*, to the extent that Plaintiff contends the ODC's decision to file charges before the Supreme Court acted on his petition for a writ of mandamus evinces bad faith or fraud, he is, again, mistaken. Mandamus is, of course, an extraordinary form of relief that is rarely granted. *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380 (2004). To say that a fact-bound petition for a writ of mandamus in the Supreme Court is a longshot is an understatement by any measure. *See* Stephen M. Shapiro, et al., *Supreme Court Practice* 668–69 (10th ed. 2013) ("The Supreme Court has long refused to issue writs of mandamus . . . to control . . . the discretionary acts of a lower court."). Consistent with that high hurdle, the Solicitor General waived its response to Plaintiff's petition, and the Supreme Court denied the petition on October 1, 2018 without requesting a response. *In re Bundy*, 139 S. Ct. 266 (Mem.)

7

(Oct. 1, 2018). For present purposes, it is enough to conclude that bringing disciplinary charges against Plaintiff while his Supreme Court petition for a writ of mandamus was pending—even assuming that the ODC did not bring the petition to the attention of the member of the Board required to sign off on the Specification of Charges, Dkt. 1 at 6, 9 (Compl. ¶¶ 21, 37–39)—does not support a claim of bad faith or fraud.

The Court will, accordingly, dismiss Plaintiff's claims for injunctive relief as barred by *Younger* abstention for the reasons explained at greater length in *Klayman I*, slip op. at 14–23.

**B.    Damages Claims Against the ODC and Its Staff**

Plaintiff's claims for damages against the ODC and its members are also barred. As the Court explained in *Klayman I*, No. 18-cv-1579, "the ODC, an instrumentality of the D.C. Court of Appeals, is not subject to suit." Slip op. at 24 (citations omitted). Furthermore, "judicial immunity shields [members of the ODC] from liability for carrying out their official duty: prosecuting attorney misconduct." *Id.* at 24–25. The ODC members' immunity is abrogated only if their conduct falls outside the scope of their official duties. *Id.* at 27. In its prior opinion, the Court concluded that initiating charges of misconduct falls well within the ODC members' official duties. *See id.* at 27–28. Plaintiff has failed to offer any basis to conclude that the Bundy charges are any different than the charges addressed in *Klayman I*. To the contrary, his brief in this case simply repeats the arguments that the Court has since considered and rejected in *Klayman I*. *See* Dkt. 13 at 21–24.

The Court, accordingly, concludes that the ODC is not subject to suit and that Defendants' act of charging Plaintiff in the Bundy matter are protected by absolute immunity.

## C. Failure to State a Claim

That leaves Plaintiff's claims against the D.C. Bar and its president, Esther Lim. The sole basis of Plaintiff's claims against these Defendants is that Lim was "placed on notice of the illegalities . . . by other Defendants, but has failed to take remedial action." Dkt. 1 at 6 (Compl. ¶ 22). The Court concludes that this bare allegation fails to state a claim. To begin, Plaintiff has failed to allege any facts in support of his conclusory assertion that the D.C. Bar and its president have an obligation to oversee bar disciplinary proceedings and to "take remedial action." To the contrary, as Defendants correctly point out, the D.C. Bar Rules make clear that the Board of Professional Responsibility ("the Board") and ultimately the D.C. Court of Appeals—not the president of the D.C. Bar—oversee attorney disciplinary proceedings. *See* D.C. Bar R. XI, § 4(e); *see also Klayman I*, slip op. at 2–3 (describing bar discipline framework); Dkt. 7 at 14 ("The [ODC] and its lawyers report to and are subject to the oversight authority of the D.C. Court of Appeals—not the D.C. Bar."). There is no provision of the D.C. Bar Rules that either obligates or empowers the president of the D.C. Bar to intercede in ongoing disciplinary proceedings. The D.C. Bar and Lim are thus not liable for the conduct of ODC members under the theory of respondeat superior. *See Davis v. Megabus Ne. LLC*, 301 F. Supp. 3d 105, 110 (D.D.C. 2018) (discussing application of respondeat superior).

But even if there were circumstances under which the president of the D.C. Bar *might* be able to intercede in a particular proceeding, that alone would still be insufficient to state a claim for abuse of process, malicious prosecution, fraud, and violations of his First and Fourteenth Amendment Rights. *See* Dkt. 1 at 17–21 (Compl. ¶¶ 80–104). Under established pleading standards, a plaintiff must allege facts that, if accepted as true, set forth a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Here, however, Plaintiff

does not allege that Lim played any role in initiating formal charges against Plaintiff, and he does not allege that she refused to intercede on his behalf *because of his political activity or gender*, or that *her failure to do so amounted to fraud*. The Court will, accordingly, dismiss Plaintiff's claims against the D.C. Bar and Lim for failure to state a claim.

**D.    Plaintiff's Motion for Leave to File Surreply**

Plaintiff's motion for leave to file a surreply fails to identify any arguments or material facts that were raised for the first time in Defendants' reply. He, accordingly, is not entitled to what amounts to an effort simply to have the last word. *See Nix El v. Williams*, 174 F. Supp. 3d 87, 92 (D.D.C. 2016) (denying leave to file surreply); *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001) (same). Nevertheless, the Court reviewed Plaintiff's surreply to ensure that the Court was fully informed of Plaintiff's contentions. Because the Court has already reviewed the brief, and because the Court's consideration of the brief will not cause Defendants any prejudice, the Court will—out of an abundance of caution and as an exercise of its discretion—grant Plaintiff's motion for leave to file.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 7, and will dismiss the complaint without prejudice. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 623–24 (D.C. Cir. 2017). The Court will also **GRANT** Plaintiff's motion for leave to file a surreply, Dkt. 16.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 5, 2019