**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN<br>　　　　　Plaintiff,<br>v.<br><br>ESTHER LIM, *et al.*,<br>　　　　　Defendants. | Civil Action No.: 1:18-cv-2209 |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING MOTION TO DISMISS AND FOR RECUSAL OR DISQUALIFICATION**

　　　　Plaintiff Larry Klayman ("Mr. Klayman") hereby respectfully requests that pursuant to Federal Rules of Civil Procedure 60 (b), this Court reconsider its order of June 5, 2019 granting Defendants' Motion to Dismiss and grant Mr. Klayman's renewed motion for recusal or disqualification and vacate all of its orders in this matter.

　　　　Regrettably and egregiously, it appears that the Honorable Randolph D. Moss ("Judge Moss") issued orders based not on the law or facts presented, but instead in an act of protectionism towards his fellow Democrats and pro-Clinton and Obama leftists at the Office of Bar Disciplinary Counsel ("ODC"). This is exactly what Mr. Klayman had feared, if not anticipated, would likely occur, as set forth in his prior Request for Voluntary Recusal that was filed in *Klayman v. Fox*, 1:18-cv-1579 (D.D.C) ("*Fox* Case") ECF No. 4, which this Court denied after sitting on the pleadings and delayed adjudication of this urgent case or controversy for many months, with now demonstrated at best calculated false assurances of impartiality.

　　　　In this regard, Judge Moss has donated heavily to former First Lady and Presidential candidate Hillary Clinton former President Barack Obama, former presidential candidate John Kerry, former Vice President Biden, the highly partisan Senator Chris Van Hollen, and a host of other left leading Democrat candidates. Contributions between 1999 and 2013 including joint fundraising contributions total a huge $34,850.00, not even considering similar considerable

contributions from the partners of Court's former primarily Democrat mega law firm, WilmerHale (aka Wilmer Cutler Pickering Hale and Dorr, LLP). <u>Exhibit 1</u>. WilmerHale, not coincidentally, is also the law firm of Special Counsel Robert Mueller, a corrupt prosecutor, who packed his prosecutorial staff with rabid pro-Clinton/Obama Democrats lawyers some of whom also were partners at WilmerHale, such as Jeannie Rhee who Mr. Klayman opposed as counsel in a RICO case against the Clinton Foundation and Hillary and Bill Clinton. Mueller, Rhee and the other partisan prosecutors on the staff of the Special Counsel tried, at great time and expense to the American taxpayer, to destroy President Donald Trump through hoped for criminal charges and recently by suggesting a politically-based impeachment by Democrats in the House of Representatives[1]. Donald Trump is a president who Mr. Klayman strongly supports and has brought lawsuits to defend his term in office. The enormity of the Court's and WilmerHales' partisan political contributions creates at a minimum the appearance of a conflict of interest, much more the impression that the Court effectively purchased his federal judicial appointment by President Barack Obama and fellow leftist Democrats.

Furthermore, and to a rational person's surprise given the hard facts set forth herein, Judge Moss was a political appointee with regard to various high level U.S. Department of Justice positions during the Clinton and Obama administrations and has worked for or volunteered for various Democrat causes. Judge Moss was appointed by Bill Clinton as Assistant Attorney General at the Office of Legal Counsel. *Fox* Case, ECF No. 4-2. Furthermore, the Court volunteered for the Obama-Biden presidential campaigns in 2008 and 2012, as well as the Kerry-

---

[1] Mueller and his staff including the Court's former partner at WilmerHale, Ms. Rhee, even threatened Mr. Klayman's client, Dr. Jerome Corsi, with indictment if he refused to provide testimony that they knew to be false in order to try to implicate President Trump in the Russian collusion investigation. Mr. Klayman brought a lawsuit for this. *Corsi v. Mueller*, 1:18-cv-2885 (D.D.C.)

Edwards presidential campaign in 2004 and the Clinton presidential campaign in 2007 or 2008. The Court also volunteered for Chris Van Hollen's congressional campaign in 2002 and Senator Gary Hart's presidential campaign in 1984. *Fox* Case, ECF No. 4-2.

On the other hand, Mr. Klayman is a prominent conservative and non-partisan attorney and public interest activist who has brought many lawsuits against Hillary Clinton, Barack Obama, George W. Bush, and politicians and government officials. He conceived of and founded the prominent conservative public interest watchdog groups, Judicial Watch, Inc. and Freedom Watch, Inc. In 2003-2004, he ran for the U.S. Senate in the Florida Republican Primary.

It is clear that this Court's political partisanship has more than severely impacted and instead improperly influenced its decision-making, particularly given the fact that allegations concerning the Clintons and Democrats have been levied against Mr. Klayman in the bar disciplinary proceeding at issue herein, as set forth in the Amended Complaint, which alleges:

> Finally, at the hearing in the Sataki matter, Defendants, acting in concert, by and through Defendant Smith, openly admitted that their motivation in prosecuting bar complaints against Mr. Klayman is because he had filed large and complex lawsuits against Hillary Clinton, other Democrats, and other related parties, persons, and entities.

Not coincidentally, the Disciplinary Bar Counsel, Hamilton Fox and Deputy Bar Counsel, Elizabeth Herman, both Defendants, have also donated monies to Barack Obama and other Democratic political candidates, some of which Mr. Klayman has sued in the past as part of his public interest advocacy. *See* Exhibit 1.

Regrettably, as has been the case in virtually nearly every single case involving President Trump or his supporters, such as Mr. Klayman, the decisions rendered have been based on biased political lines. This is just the latest example. Tellingly, Judge Moss dismissed Mr. Klayman's claims without prejudice, which can only be explained by the fact that Judge Moss knew that his

order was wrong, yet still felt compelled to shield ODC from having to participate in discovery. Indeed, if Judge Moss's reasoning was valid, as set forth below, there would simply be no basis for Mr. Klayman to even amend and all of his claims would have been dismissed with prejudice. Judge Moss is trying to have it both ways by trying to give off the false impression of impartiality, while protecting the fellow left-wing ODC and the other Defendants from even having to participate in discovery. Put simply, Defendants are not above the law and cannot be shielded from even discovery, creating the appearance of a politically based cover-up.

**I.     MOTION FOR RECONSIDERATION**

Mr. Klayman seeks reconsideration pursuant to Fed. R. Civ. P. 60(b), which states, in relevant part, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (6) any other reason that justifies relief."

The Court has egregiously erred on two grounds adopting its same errors as its order in the *Fox* Case: (1) finding that Mr. Klayman did not plead the "bad-faith" exemption to the *Younger* Abstention Doctrine with the requisite specificity and (2) finding that Defendants are covered by absolute immunity because Mr. Klayman did not plead action outside of the scope of employment with the requisite specificity. However, even a cursory review of the Amended Complaint will show that it is very specific and full of detailed factual allegations regarding both issues which should have prompted and thus allowed this matter to proceed to discovery.

With regards to *Younger*, the Court admits that the U.S Court of Appeals for the District of Columbia Circuit has squarely held that an exception to the *Younger* doctrine exists "where 'the pending state action was brought in bad faith or for the purpose of harassing' the federal plaintiff…." Despite the incredibly specific Amended Complaint, the Court still strained to

contrive a holding that its allegations were conclusory. The Amended Complaint expressly and unequivocally pleads that ODC initiated the action against Mr. Klayman in bad faith:

> The Individual Defendants, acting in concert as joint tortfeasors, each and every one of them, have engaged in a pattern and practice of abusing and exceeding their position of authority, which is granted under state law, but which the abuse of authority is not, to act outside the scope of their official duties and intentionally violate Mr. Klayman's constitutional and other rights by selectively prosecuting Mr. Klayman because of his political activism, free speech, and gender, as set forth in more detail below. Am. Comp. ¶ 39.

The Court in its opinion for the *Fox* Case itself incredibly and apparently "cluelessly" even runs through multiple specific allegations of bad faith pled in the Amended Complaint:

> *First*, that Plaintiff has "brought lawsuits against Hillary Clinton, Barack Obama, George W. Bush, and other politicians and government officials;" "conceived and founded . . . Judicial Watch, Inc. and Freedom Watch, Inc.;" and "r[an] for the U.S. Senate in the Florida Primary." Dkt. 10 at 9 (Am. Compl. ¶ 41). *Second*, that two of the four individual defendants "donated defendants "donated significant sums of monies to Hillary Clinton and Barack Obama as well as other liberal Democrats." *Id.* (Am. Compl. ¶ 42). *Third*, that one of the members of "the hearing committee that is adjudicating the Sataki Complaint" signed a complaint "seeking to discipline" Kellyanne Conway "for her political beliefs" and "to . . . chill[] . . . free speech on behalf of President Donald J. Trump." *Id.* 19–20 (Am. Compl. ¶¶ 89-92). *Fourth*, that one of the individual defendants allegedly has a conflict of interest, unrelated to any political activity, *id.* at 15 (Am. Compl. ¶ 68), and acted in a hostile manner towards Plaintiff at a meeting, *id.* at 15–16 (Am. Compl. ¶¶ 69–75); another individual defendant acted in a "hostile" manner and with a "disrespectful demeanor" towards Plaintiff, *id.* at 12 (Am. Compl. ¶¶ 52–56); and yet another individual defendant suggested that Plaintiff resign from the bar to avoid "embarrassment and bad publicity," *id.* at 13–14 (Am. Compl. ¶¶ 60–61). *Finally*, that, in Plaintiff's view, the Sataki Complaint is "clearly non-meritorious," as evidenced by the fact that the Florida and Pennsylvania Bars summarily rejected the same charges. *Id.* at 17 (Am. Compl. ¶ 80). ECF No. 33 at 19-20.

Beyond the Court's recounting of the specific allegations as to bad faith, which in and of itself should have been much more than adequate at the pleading stage for this matter to proceed to discovery, Mr. Klayman also alleges that Defendants unilaterally resurrected Mr. Sataki's Complaint after it had been abandoned by employing investigators to literally hunt down Ms.

5

Sataki in order to get her to continue her complaint against Mr. Klayman. Am. Comp. ¶ 36. Furthermore, the Amended Complaint sets forth that Defendant Herman brazenly and openly admitted her bias and animus against Mr. Klayman due to his political beliefs, activism, free speech, and gender when she curtly and in a hostile manner, on more than one occasion, stated to Mr. Klayman, "I [we] don't like the way you practice law." Am. Comp. ¶ 54. When Mr. Klayman advised her at the same meeting that The Florida Bar and the Pennsylvania Bar had summarily dismissed Ms. Sataki's claims at the time seven years ago, she on behalf of Defendants stated that "we couldn't care less." Am. Comp. ¶ 56. The same bad-faith was exhibited by Defendant Fox during a May 11, 2018 meeting:

> From the outset, Defendant Fox immediately and belligerently stated that he was not going to hear anything about or discuss dismissal of the Specification of Charges, but that Mr. Klayman could simply produce the evidence of misconduct and unethical and illegal behavior.
> Mr. Klayman calmly responded that he would not be dictated to as to what he could discuss. This prompted Defendant Fox to stand up threateningly, lurch towards Mr. Klayman, and scream "this meeting is over." He demanded that Mr. Klayman "leave [his] office."
> When Mr. Klayman calmly got up from his chair, he indicated that this gross prosecutorial misconduct would leave him no recourse but to file this instant Complaint and now Amended Complaint, as well as bar grievances which are attached hereto as Exhibit 1 and are incorporated herein by reference.
> Defendant Fox then approached Mr. Klayman at the door, as if to stalk him and screamed, "I welcome your complaint," adding in a hostile voice showing great animus, "do you seriously believe that I would not welcome the opportunity through discovery to show how you practice law?" Am. Comp. ¶¶ 71-74.

And, lastly, "at the hearing in the Sataki matter, Defendants, acting in concert, by and through Defendant Smith, openly admitted that their motivation in prosecuting bar complaints against Mr. Klayman is because he had filed large and complex lawsuits against Hillary Clinton, other Democrats, and other related parties, persons, and entities."

This matter is at the pleading stage and Mr. Klayman has not had the benefit of discovery to this point. It is, quite frankly, impossible for Mr. Klayman to plead with any more specificity

than what was pled in the Amended Complaint, which specificity this Court has expressly recognized in its order granting dismissal. Indeed, the entire crux of Mr. Klayman's Amended Complaint is that Defendants acted in bad faith by selectively prosecuting him in retaliation for his gender and political advocacy. It alleges that Defendants' entire purpose for instituting the Sataki Complaint is to remove Mr. Klayman from the practice of law, even if it is achieved through simply bankrupting him by "piling on" frivolous complaints that he must then defend at enormous personal time and expense. Crucially, these frivolous complaints are not being brought against Mr. Klayman for any legitimate purpose, such as to curb alleged unethical behavior, but simply because Defendants wish to silence Mr. Klayman's conservative public interest litigation and advocacy. This is much more than textbook bad faith, and as pled, Mr. Klayman's claims should have been allowed to proceed to discovery before dismissal was even considered.

The Court further erred by holding that Mr. Klayman failed to plead that Defendants exceeded the scope of their official duties - and therefore exceeded any immunity - with the requisite specificity. Indeed, in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." *Id*. at 128. However, as admitted by this Court, Mr. Klayman specifically pled that Defendants were acting in bad faith by targeting him for selective prosecution that they knew was meritless based on Mr. Klayman's "political activism, free speech, and gender." Am. Comp.¶ 39. Despite this, the Court tries to minimize Defendants' clearly illegal and unconstitutional misconduct as a simple "disagreement" over whether Mr. Klayman had engaged in misconduct. The Amended Complaint goes far beyond a mere "disagreement." It specifically pleads that Defendants acted in bad faith and abused their authority to specifically target and try to remove Mr. Klayman from the practice of law. Holding that such conduct falls within the

scope of Defendants' official duties is impossible, unless the Court is adopting a new rule that any conduct, no matter how illegal or unconstitutional, including murder, would be covered by absolute immunity so long as it occurs within the confines of ODC's offices. Such a holding simply makes no sense, and this Court obviously recognizes this but for its bias and prejudice. If Defendants truly had absolute immunity, there would be nothing Mr. Klayman could amend to change that fact and the claims would have been dismissed with prejudice. However, Judge Moss is trying to have it both ways – by giving the appearance of impartiality while still protecting and shielding ODC from basic discovery at all costs. Clever, but also a transparent attempt to shield the Court's leftist Democrat "brothers" from even discovery, which undoubtedly would reveal even more bad faith illegal conduct not shield by any immunity.

**II.    MOTION FOR DISQUALIFICATION**

Pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144, Mr. Klayman moves for the disqualification or recusal of Judge Moss. The right to a "neutral and detached judge" is protected by the U.S. Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972).

Under 28 U.S.C. § 455, a judge " . . . shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In order to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case, judges must adhere to high standards of conduct. *York v. United States*, 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . ." ABA Code of Judicial Conduct Canon 3(C)(1). Disqualification or recusal is required when there is even the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high

degree of favoritism or antagonism to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Similarly, Under 28 U.S.C. § 144:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Furthermore, the Supreme Court's holding in *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252 (2009) spotlighted the power of campaign contributions as a corrupting force. In *Caperton*, the Court held that a justice of the Supreme Court of Appeals of West Virginia was disqualified on due process grounds from sitting on a case involving a campaign contributor. *Id*. at 2256-57. The Supreme Court held that a due process violation can be premised on evidence that falls short of "proof of actual bias." *Id*. at 2263. Instead, all that is needed is evidence showing "a serious risk of actual bias – based on objective and reasonable perceptions." *Id*. Proof of a high "probability[,]" *id*. at 2259, or "serious risk of actual bias[,]" *id*. at 2263, on a judge's part not only justifies recusal, but also provides grounds for an appellate challenge to a refusal to recuse under the Due Process Clause. *Id*. at 2263-65.

In lieu of an inquiry into the existence of actual bias, *Caperton* instructs reviewing courts to determine "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id*. at 2263 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Recusal is required whenever "an objective inquiry into [the conflict problem] under all the circumstances 'would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance….'" *Id*. at 2264.

9

It is clear, from the preceding section, that this Court has allowed its political partisanship to bias and influence its decision-making. The Court strained to find a way to prevent Mr. Klayman from even taking discovery of ODC, despite there being no basis in law or fact to do so. The incredibly specific Amended Complaint details exactly how and why Defendants have abused their authority and exhibited extreme bad faith at a minimum to specifically target and try to remove Mr. Klayman from the practice of law. The Court even acknowledged the specific allegations of bad faith and unconstitutional illegality pled in the Amended Complaint, ECF No. 33 at 19-20, yet still found the Amended Complaint to be conclusory, with a heads Defendants win tail Mr. Klayman loses approach to jurisprudence. This wreaks of bias and protectionism, and as such this Court must recuse itself and vacate all of its orders so that this matter may proceed before a truly independent judicial officer.

### III.   CONCLUSION

Plaintiff Mr. Klayman respectfully requests that this Court grant the motion for reconsideration and allow this matter to proceed to discovery. If it is not willing to do so, it must, at a minimum, recuse itself and vacate all of its orders, as it has exhibited deep-seated bias and animus that has made independent judgment impossible.  Regrettably, Mr. Klayman's initial fears have come home to roost, and the Court's early disingenuous claims to the contrary were obviously intended to lure Plaintiff into a sense of security and honest jurisprudence.

 Mr. Klayman again requests oral argument, so that he can respectfully address this Court in person about the prejudicial and serious errors in his dismissal order, which was issued "behind closed doors" without the benefit of holding a hearing in the open to address these egregious matters and answer any factual and legal questions that will hopefully now be posed in good faith and without political bias and prejudice. Defendants do not consent to this motion.

Dated: June 10, 2019                                   Respectfully submitted,

                                                       */s/ Larry Klayman*
                                                       Larry Klayman, Esq.
                                                       KLAYMAN LAW GROUP, P.A.
                                                       2020 Pennsylvania Ave N.W. #800
                                                       Washington, D.C. 20006
                                                       Tel: (561) 558-5336
                                                       Email: leklayman@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on June 10, 2019.

                                                       */s/ Larry Klayman*
                                                       Attorney